[Civ. No. 20197. Third Dist. Jan. 22, 1982.]

BENTZ PLUMBING & HEATING, Plaintiff and Appellant, v.
FRANK V. FAVALORO, Defendant and Respondent;
GEORGE A. CAVALLETTO et al., Defendants and Appellants.

COUNSEL

Russell, Jarvis, Estabrook & Dashiell and Laurence B. Dashiell for Plaintiff and Appellant.

Tremaine, Shenk, Stroud & Robbins and Terence C. McGaughey for Defendants and Appellants.

Thomas F. Hyde for Defendant and Respondent.

OPINION

BLEASE, J.—Defendants George A. Cavalletto, George A. Cavalletto, Jr., and Pattie J. Cavalletto, are the owners and lessors of real property in Roseville, California. Defendant Carrows Restaurants, Inc. (Carrows), leased the property in May of 1978 and commenced to build a restaurant. On August 9, 1978, Carrows entered into a construction contract with Frank V. Favaloro,[1] doing business as Roman West Construction. Favaloro, in turn, contracted with plaintiff Bentz Plumbing & Heating (Bentz) to install the plumbing in the restaurant.

The contract between Carrows and Favaloro provided for monthly payments to the prime contractor. It required that "[l]ien waiver releases from all sub-contractors must be submitted before further payments are approved" and prescribed the form of the waiver. As each application for payment was made by Favaloro, it was required to be accompanied by lien waivers for the work claimed in the previous application. After six progress payments had been made by Carrows, the relationship between it and the prime contractor broke down and the construction was finished by another contractor and new subcontractors. With three applications, Favaloro obtained lien waivers from Bentz acknowledging the receipt of $7,500, $4,000 and $3,000, respectively, and "waiv[ing] and releas[ing] any and all lien, or claim or right of lien on said above described building and premises on account of labor or materials, or both, furnished or which may be furnished by the undersigned . . . ." On the lower portion of each waiver was a notation,

---

[1]Favaloro did not appeal and made no appearance as respondent in this proceeding.

typed in by the prime contractor, giving directions for allocation of the amount of the waiver to different payment periods.

Although the lien waivers acknowledged receipt of $14,500 by Bentz, Bentz actually received $6,750 from Favaloro. The parties stipulated that Bentz is entitled to an additional $14,406.49. Defendants now contend that the trial court erred in ruling that Bentz's lien rights were "not impaired in any respect" by the waivers. Bentz cross-appeals from the trial court's refusal to award prejudgment interest on the amount found to be due it. We uphold the trial court's ruling as to the lien waivers, but reverse the denial of prejudgment interest.

DISCUSSION

I

Civil Code section 3262 provides: "(a) Except as otherwise provided in subdivision (b), neither the owner nor original contractor by any term of their contract, or otherwise, shall waive, affect, or impair the claims and liens of other persons whether with or without notice, and any term of the contract to that effect shall be null and void. [¶] (b) Neither the owner who is a natural person, nor the original contractor shall by any term of their contract, or otherwise, waive, affect, or impair the claims or liens of other persons whether with or without notice, except by their written consent and any term of the contract to that effect shall be null and void, if the contract is for the construction of any of the following: [¶] (1) A single family dwelling or duplex. [¶] (2) Improvements to a single family dwelling or duplex. [¶] (3) Improvements to real property upon which a single family dwelling or duplex is located, or is to be located, where the improvement is related to such residential use."

■ Defendants urge us to read the statute as "merely preclud[ing] the *owner* or *original contractor* from waiving or impairing the claims and liens of *other* persons by any term of their original contract, or otherwise." Nothing in the language of the statute, they contend, prevents a *sub*contractor from executing an "individual lien waiver[]." We disagree.

The construction urged by defendants would defeat the legislative purpose of the statute to protect lienholders against having to consent to impairment of their rights for lack of bargaining power. "[T]he courts

have uniformly classified the mechanics' lien law as remedial legislation, to be liberally construed for the protection of laborers and materialmen." (Fn. omitted.) (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 826-827 [132 Cal.Rptr. 477, 553 P.2d 637]; *Hendrickson* v. *Bertelson* (1934) 1 Cal.2d 430, 432 [35 P.2d 318].)

Civil Code section 3262 was amended to its present form in 1972. (Stats. 1972, ch. 1319, § 1, p. 2627.) Prior to its amendment, it read: "Neither the owner nor original contractor by any term of their contract, or otherwise, shall waive, affect, or impair the claims and liens of other persons whether with or without notice *except by their written consent* and any term of the contract to that effect shall be null and void." (Italics added.) (As added by Stats. 1969, ch. 1362, § 2, p. 2780, operative Jan. 1, 1971.)[2] The italicized language was deleted by the 1972 amendment, making clear the Legislature's intent to preclude the impairment or waiver of liens by consent of the lienholder.[3] Defendants'

---

[2]Civil Code section 3262 is descended from a nearly identical provision enacted in 1885: "It shall not be competent for the owner and contractor, or either of them, by any term of their contract, or otherwise, to waive, affect, or impair the claims and liens of other persons, whether with or without notice, except by their written consent, and any term of the contract to that effect shall be null and void." (Former Code Civ. Proc., § 1201, added by Stats. 1885, ch. 152, § 7, p. 146.) Before the enactment of this statute, there was a conflict in authority whether an owner and prime contractor could by a provision of their contract waive the rights of subcontractors and materialmen. (Compare *Bowen* v. *Aubrey* (1863) 22 Cal. 566, 570-571 [subcontractor bound by contract] with *Whittier* v. *Wilbur* (1874) 48 Cal. 175, 177-178 [subcontractor not bound].) The conflict arose because of the general rule at that time that the rights of subcontractors and materialmen were subject and subordinate to the prime contract, so that lien rights were limited to the amount still owing the prime contractor when the liens were recorded. (*Renton* v. *Conley* (1874) 49 Cal. 185, 187-188; *Dingley* v. *Greene* (1880) 54 Cal. 333; 335-337.) The statute settled the conflict by requiring a lien waiver by the written consent of the subcontractor.

[3]Defendants concede that the object of the 1972 amendment was to protect subcontractors and materialmen from being forced to consent in writing to impairment of their lien rights in order to get the job or to get paid. It reflects an evident legislative judgment that, except in regard to some (single-family or duplex) residential construction, the economic ability of owners and prime contractors to extract consent deprived subcontractors and materialmen of the protection which the mechanics' lien laws are intended to afford. To read the statute as defendants urge us to do would render the 1972 amendment a nullity. If owners and prime contractors are not prevented by the statute from extracting individual lien waivers from subcontractors and materialmen, nothing is gained by prohibiting what defendants admit is certainly covered by the statute—securing consent to a provision in the prime contract waiving all lien rights. The same inequality of bargaining power will compel subcontractors to give their reluctant "consent" to impairments of their rights where, as here, continued payments to the

argument that section 3262 is limited to waiver provisions *within* the contract between the owner and contractor is belied by the statutory language. It says that neither the owner nor original contractor "by any term of their contract, *or otherwise*," shall "affect or impair" a subcontractor's lien. (Italics added.) To require a subcontractor to consent to a lien waiver to secure payments due a prime contractor at the least "affect[s]" and probably "impair[s]" the lien by the threat of resulting nonpayment to the subcontractor. As such, it was "null and void" under Civil Code section 3262 and the lien waivers secured thereby are similarly invalid.

## II

■ Defendants alternatively claim that the averments of payment on the lien waivers estop Bentz from showing that it received less money in payment than was represented.

Before the 1972 amendment of Civil Code section 3262 it was settled that estoppel might be invoked against a liening subcontractor or materialman who, in order to induce payment from the owner, had given the contractor a waiver of lien, or a false receipt of payment, or a promise to look only to the contractor for his money. (*R. D. Reeder Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373, 378-379 [57 Cal.Rptr. 841, 425 P.2d 785] [contractor and subcontractor concealed the latter's existence to preclude owner from requiring a formal written lien waiver]; *Ware Supply Co.* v. *Sacramento Savings & L. Assn.* (1966) 246 Cal.App.2d 398 [54 Cal.Rptr. 674] [subcontractor promised to look only to contractor]; *Jaekle* v. *Halton* (1938) 25 Cal.App.2d 706, 709-713 [78 P.2d 441] [materialman issued premature receipts].) Our research has uncovered no published decisions considering the effect of the 1972 amendment of Civil Code section 3262 on this rule.[4] The amendment was in response to this law. If we were to now hold that a subcontractor or materialman is estopped by its execution of a lien waiver we would entirely negate section 3262 as amended. Public policy, expressed in

---

prime contractor depend upon its obtaining and presenting lien waivers. This is precisely the situation at hand, as Bentz furnished the waivers upon Favaloro's representation that he needed them in order to obtain payment from Carrows.

[4]*E. D. McGillicuddy Constr. Co.* v. *Knoll Recreation Assn., Inc.* (1973) 31 Cal. App.3d 891, 898-902 [107 Cal.Rptr. 899], relied upon by defendants, was decided after the 1972 amendment, but involved transactions that occurred long before, in 1966 and 1967.

that statute, precludes an owner from relying "reasonably" upon such a waiver. Nor will the doctrine of equitable estoppel, "which rests firmly upon a foundation of conscience and fair dealing" (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 488 [91 Cal.Rptr. 23, 476 P.2d 423]; fn. omitted), allow an application of the doctrine which turns on its head the legislative judgment that principles of "fair dealing" require that subcontractors and materialmen be protected from overreaching by owners and prime contractors intent on depriving them of their lien rights.[5]

We do not mean to denigrate the legitimacy of the owner's interest in knowing whether and how much subcontractors and materialmen with potential lien claims on his property have been paid by the prime contractor.[6] We observe, however, that there are several means of protecting their interests. The property owner may limit his lien liability to the measure of the prime contract price by recordation of the contract where a payment bond has been obtained by the prime contractor in an amount equal to 50 percent of the contract price. (Civ. Code, §§ 3123, 3235, 3236.)[7] The owner may himself, by purchase and recordation of a payment bond in like amount, secure priority over mechanics' liens. (Civ. Code, § 3139; *Connolly Development, Inc. v. Superior Court, supra*, 17 Cal.3d at p. 808.) Finally, defendants could have issued joint checks to pay for each subcontractor's work (i.e., checks made out to the prime contractor and the subcontractor or materialman as joint payees). Estoppel *may* be invoked against a subcontractor which endorses a joint check, on the ground that its inclusion as payee makes it clear that the maker of the check intends thereby to discharge his obligation to the subcontractor. (*Post Bros. Constr. Co. v. Yoder* (1977) 20 Cal.3d 1, 5-6 [141 Cal.Rptr. 28, 569 P.2d 133]; *Re-Bar Contractors, Inc. v. City of Los Angeles* (1963) 219 Cal.App.2d 134, 136 [32 Cal.Rptr. 607]; see also Cal. Construction

---

[5]Accordingly, we must also reject defendants' contention that the trial court erred in declining to make specific findings on the issue of estoppel.

[6]This interest is recognized in Business and Professions Code section 7108.5, which subjects a prime contractor to professional discipline if it fails to pay any specialty contractor within 10 days of receipt of each progress payment.

[7]It has been suggested that the option of requiring the prime contractor to take out a payment bond is not available, as a practical matter, in home construction. (*R. D. Reeder Lathing Co. v. Allen* (1967) 66 Cal.2d 373, 380 [57 Cal.Rptr. 841, 425 P.2d 785]; Comment, *The Release Bond Statutes: Achieving Balance in the Mechanics' Lien Laws* (1980) 28 UCLA L.Rev. 95, 106-108.) This may have been a factor in the Legislature's decision to retain the exception permitting impairment of liens with written consent of the subcontractor in home-building situations.

Contracts and Disputes (Cont.Ed.Bar 1976) §§ 3.55, 3.56, pp. 123-126; *id.* (Cont.Ed.Bar Supp. 1981) pp. 15-16; Cal. Mechanics' Liens and Other Remedies (Cont.Ed.Bar 1972) § 6.19, p. 161; *id.*, (Cont.Ed.Bar Supp. 1980) pp. 41-42 [importance of using joint checks due to unsettled interpretation of Civ. Code, § 3262]; Moss, *Application of the Doctrine of Estoppel in Construction Industry Litigation* (1974) 49 L.A. Bar Bull. 250, 254 [same].)

## III

■ Bentz cross-appeals from the trial court's denial of prejudgment interest (from Jan. 1, 1979, identified in the mechanic's lien as the date when the obligation became due) under Civil Code section 3287, which prescribes, in subdivision (a), such an award of interest where damages are "certain, or capable of being made certain by calculation . . . ."[8] Although it is true that there was initially some dispute among the parties concerning the amount of work completed by Bentz under the contract, which was resolved by a stipulation at the commencement of the trial, we are persuaded that this case is analogous to situations where the party claiming to be entitled to prejudgment interest holds a liquidated contractual claim subject to an unliquidated setoff for defective performance.[9] In such cases, it is settled that prejudgment interest should be awarded on the balance of the claim after deduction of the unliquidated setoff. (*Leaf* v. *Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 376 [120 Cal.Rptr. 749]; *Hansen* v. *Covell* (1933) 218 Cal. 622, 629 [24 P.2d 772, 89 A.L.R. 670]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, §§ 654-655, pp. 556-558.)

---

[8]Civil Code section 3287 provides: "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state. [¶] (b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

[9]Under Civil Code section 3123, Bentz has a lien "for the reasonable value of the labor, services, equipment, or materials furnished" by it. Nevertheless, since the work was done pursuant to a contract, its "reasonable value" is best calculated with reference to the contract price, less an appropriate setoff for the work not completed.

## DISPOSITION

The portion of the judgment denying prejudgment interest is reversed. In all other respects the judgment is affirmed. Defendants Cavalletto and Carrows shall bear the costs on appeal.

Reynoso, Acting P. J., and Carr, J., concurred.

The petition of defendants and appellants for a hearing by the Supreme Court was denied April 1, 1982. Reynoso, J., did not participate therein.