[No. D019999. Fourth Dist., Div. One. Sept. 26, 1996.]

WISPER CORPORATION N.V. et al., Plaintiffs and Appellants, v.
CALIFORNIA COMMERCE BANK et al., Defendants and Appellants;
HIGGS, FLETCHER & MACK, Objector and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of parts I, II, IV through XII and XIV.

**COUNSEL**

Billet & Kaplan, Jerome S. Billet, Terry Kaplan and Michael Dewberry for Defendants and Appellants.

Meisenheimer & Herron and Matthew V. Herron for Plaintiffs and Appellants.

Higgs, Fletcher & Mack and Greg A. McAtee for Objector and Appellant.

**OPINION**

HUFFMAN, J.—California Commerce Bank (CCB) appeals a judgment following a jury verdict finding it liable for (1) 25 percent of the damages suffered by Wisper Corporation N.V. (Wisper) caused by CCB's negligence in dealing with Edgar Benitez (Benitez), an employee of Wisper who diverted proceeds of Wisper's checks through an account he opened with

CCB, and (2) conversion of one check payable to International Investments Corporation (International). CCB contends on appeal: (1) CCB is not liable to Wisper because Benitez was listed as an alternate payee on most of the checks diverted by Benitez; (2) equitable estoppel applies to bar International's claim; (3) the Code of Civil Procedure[2] section 339, subdivision 1 two-year statute of limitations applies to bar Wisper's claim for most of the check proceeds diverted by Benitez; (4) CCB is entitled to a setoff for amounts paid by Benitez to Wisper; (5) the court erred by awarding Wisper postjudgment interest from the date of the verdict rather than from the date of entry of judgment; (6) the court erred by denying a motion for costs filed by Banco Nacionale de Mexico, Banamex USA and Banamex Holding Company (collectively Banamex), which on Wisper's motion were dismissed as defendants; and (7) Wisper's claim is barred by its "unclean hands."

Wisper and International cross-appeal the judgment contending: (1) CCB is liable for conversion of all the checks diverted by Benitez because as a matter of law they were paid on a forged endorsement; (2) the court erred by instructing the jury regarding endorsements; (3) CCB is liable for conversion of those checks on which it purportedly supplied Wisper's endorsement; (4) CCB is liable for conversion of three checks which did not include Benitez's name; (5) Wisper's judgment against CCB should not have been reduced by its own comparative negligence; and (6) the court erred by denying Wisper's request for prejudgment interest.

Higgs, Fletcher & Mack (Higgs), attorney for CCB, appeals an order imposing sanctions against it for discovery abuse, contending the court abused its discretion.

We agree that postjudgment interest should apply from the date of entry of the judgment and not the date of the verdict, and that Banamex should have been awarded its costs as a prevailing party. We disagree with all other contentions. Accordingly, we affirm the judgment in part and reverse it in part and remand for further proceedings, and we affirm the order imposing sanctions.

### FACTUAL AND PROCEDURAL BACKGROUND

The Rivera-Torres family purchased the Colony Club apartment complex in Orlando, Florida. Epoch Management, Inc. (Epoch) was hired to manage

---

[2]All statutory references are to the Code of Civil Procedure unless otherwise specified.

the complex. The complex ultimately became owned by Wisper, the stock of which was owned by Carlos, Mauricio and Alberto Rivera-Torres.[3]

The Rivera-Torres family retained Scott Aurich (Aurich), a commercial real estate broker, to oversee the management of many of its real estate holdings. Aurich opened an office in San Ysidro and advertised for a bookkeeper or accountant to prepare financial statements, reconcile bank accounts and help Aurich oversee the operations of the United States properties. Benitez responded to the advertisement. He spoke fluent Spanish and gave Aurich references. Aurich hired Benitez. Benitez did not disclose to Aurich that he recently had been convicted of embezzling checks from a former employer. Although Aurich knew Benitez was in jail for approximately a month shortly after he was hired and Benitez's daughter told Aurich that Benitez had been convicted of driving while under the influence of alcohol or driving with a suspended license, Aurich did not confirm this information with either the court or the jail. Carlos Rivera-Torres also was aware of Benitez's jail term and loaned Benitez $6,000 for bail money.

Benitez's duties included receiving from Epoch checks from the operations of the Colony Club complex, which typically exceeded $50,000 per month. Benitez was responsible for depositing the checks received from Epoch into Wisper's existing account with the Bank of America. Benitez had a rubber endorsement stamp which read "FOR CREDIT ACCOUNT OF WISPER CORP. N. #13884-01625," apparently identifying Wisper's account number with the Bank of America. Benitez did not have any authority to withdraw money from Wisper's Bank of America account. Using Epoch's monthly financial statements and bank account statements from the Bank of America, Benitez also prepared financial statements which were given to Wisper's outside accounting firm for preparation of tax returns. Benitez also prepared financial statements for International.

After CCB's solicitation of the Rivera-Torres family's banking business, Carlos Rivera-Torres opened a personal account with CCB; Anibac, another Rivera-Torres family corporation, later opened a corporate account with CCB, based on the written authority of two of its officers, Carlos Rivera-Torres and Angel Lizardi. At a dinner meeting, Carlos Rivera-Torres introduced Benitez to several CCB officers.

On April 21, 1989, Benitez opened an account in the name of "Wisper Corporation, N.V." at the San Ysidro branch of CCB. Elizabeth Fimbres (Fimbres), CCB's customer service representative for new accounts, opened

---

[3]Carlos, Mauricio and Alberto were also the managing directors of Wisper and were registered as directors in Florida and the Netherlands Antilles.

the account. Fimbres typed a signature card and corporate resolution form, naming Benitez as the only officer of Wisper and the only signatory for the account. In Fimbres's presence, Benitez signed both documents representing himself as an officer of Wisper and as the only signatory named by Wisper's board of directors. Benitez provided no documentation to Fimbres or CCB verifying his authority to act on behalf of Wisper. Benitez merely delivered to Fimbres a translated copy of Wisper's articles of incorporation, which did not identify any of Wisper's shareholders, directors or officers, and did not name Benitez in any capacity.[4]

Beginning in April 1989 and continuing through August 1991, Benitez deposited into the new CCB account 28 checks received from Epoch and later withdrew those funds on his own signature and for his own benefit.[5] Epoch made 24 of the 28 checks payable to "Wisper Corp NV/E. Benitez" or variations of that payee designation. Benitez typically used a rubber endorsement stamp (presumably the Bank of America stamp altered to delete the account number) to endorse the checks "FOR CREDIT ACCOUNT OF WISPER CORP. N." At the time of deposit, CCB's employees typically would write the account number for CCB's Wisper account opened by Benitez (i.e., 32013880-01) below the stamped endorsement.

Alejandro Rivera-Torres was responsible for supervising the financial affairs of the Rivera-Torres family interests, including Wisper, and he received monthly reports from Epoch showing Wisper's net receipts from the Colony Club complex which should have been deposited monthly in Wisper's account with the Bank of America. He also received regular summaries of the balance in Wisper's account with the Bank of America. However, despite this available information, he never noticed Benitez's diversion of money from Wisper over the two-year period.

On May 8, 1992, Wisper and International filed a complaint for damages against CCB, Banamex and Union Bank, asserting causes of action for negligence and mistake.[6] Wisper sought damages of at least $1,399,132.83 against CCB and Banamex, and International sought damages of at least $11,820.33 against CCB and Banamex. The court denied CCB's motion for summary adjudication regarding 24 checks. The court rejected CCB's argument that because Benitez was the alternate payee on those 24 checks no cause of action could be stated against it. The court also rejected CCB's

---

[4]At trial, Wisper's expert witness testified that CCB's actions in opening an account in the name of Wisper based on this limited documentation were below the standard of care in the banking industry.

[5]One of the checks was made payable to International.

[6]The action against Union Bank was settled before trial.

motion *in limine* to exclude claims for checks diverted before May 8, 1990, rejecting CCB's argument that the section 339 two-year statute of limitations applied. The court found the section 338 three-year statute of limitations applied with the time period commencing on discovery of the facts constituting the cause of action. During the course of the trial, Wisper's motion to dismiss Banamex as a defendant was granted. At close of trial, the court granted Wisper's motion to amend its complaint to include a cause of action against CCB for conversion.

On June 29, 1993, the jury found by special verdict that check No. 2219 made payable to International in the amount of $11,820.33 was "paid on a forged endorsement" and that CCB did not "act in good faith, and in accordance with reasonable commercial standards, in paying Check No. 2219." The jury further found CCB was negligent and its negligence was a cause of damage to Wisper. It also found Wisper was negligent and its negligence contributed as a cause of its own damage. The jury found the total amount of damages suffered by Wisper and International was $1,445,953.60. The jury attributed 75 percent of the negligence to Wisper and the remaining 25 percent to CCB. On September 22, 1993, the court entered judgment against CCB (1) for International in the amount of $11,820.33 plus 7 percent interest from November 23, 1990, through June 29, 1993, and at the legal rate thereafter until paid, and (2) for Wisper in the amount of $358,533.32 plus interest from June 29, 1993, until paid. The judgment noted that Wisper's amount represented the total amount of damages found by the special verdict less the $11,820.33 amount for International, multiplied by CCB's 25 percent proportionate liability for its negligence. The court also awarded Wisper and International their costs of $7,334.88. The court initially awarded Banamex its costs, but later granted Wisper's motion to tax those costs. The court denied Wisper's motion for prejudgment interest.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III

*The Two-year Statute of Limitations of Section 339, Subdivision 1 Does Not Apply to Bar Wisper's Claim*

 CCB contends the section 339, subdivision 1 two-year statute of limitations applies to bar Wisper's claim. We disagree.

---

*See footnote 1, *ante*, page 948.

The court ruled that the three-year statute of limitations, accompanied by delayed discovery, applied to Wisper's action against CCB. In its ruling the court cited *Sun 'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920] (hereafter *Sun 'n Sand*). In *Sun 'n Sand* the California Supreme Court held that the section 338, subdivision 3 three-year statute of limitations applied to an employer's negligence action against a bank for negotiating a number of checks forged or altered by an employee. (21 Cal.3d at pp. 678, 697-698.) The court stated: "Our strong policy favors fault-based liability; negligent tortfeasors must compensate persons injured by their failure to exercise ordinary care. [Citations.] The rules governing negligence actions—including the normally applicable three-year statute of limitations of Code of Civil Procedure section 338, subdivision 3—should not be varied so as to diminish fault-based liability absent a clear and specific legislative directive." (*Id.* at p. 698, fn. omitted.) In a footnote to that statement, the court noted: "The three-year statute of limitations applies to recovery for injury to property; for different reasons of policy, the limitations period for negligence actions based on personal injuries is one year. (Code Civ. Proc., § 340, subd. 3.)" (*Id.* at p. 698, fn. 22.)

In 1988, section 338, subdivision 3 was renumbered as section 338, subdivision (c), and it provided at the time of Benitez's diversions that a three-year limitations period applies to an "action for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property. . . ." In contrast, section 339, subdivision 1 provided at the time of Benitez's diversions that a two-year limitations period applies to an "action upon a contract, obligation or liability not founded upon an instrument of writing . . . ." CCB's sole authority in support of its contention that the shorter two-year section 339, subdivision 1 limitations period applies to bar Wisper's claim is an ambiguous observation by one secondary authority: "[While it primarily governs oral contracts, section] 339(1) also governs actions based on negligent wrongs not involving injuries to person or real or tangible personal property; e.g., negligent performance of professional services. [Citations.]" (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 440, pp. 470-471.) However, neither that authority nor any other authority cited by CCB states that section 339 applies to actions involving checks or other negotiable instruments. In fact, CCB concedes in its appellant's opening brief that *Sun 'n Sand* "involved a material alteration of checks by an employee. Thus, personal property had been injured, and the action was brought within the language of [section] 338, subdivision (3) [now section 338, subdivision (c)]." *Sun 'n Sand* involved a negligence action against a bank for its negotiation of forged checks by an employee, and the case at hand involves a negligence action against CCB for, inter alia, its opening of an account in the name of Wisper which allowed Benitez to

divert checks away from Wisper. We nevertheless conclude the two cases are apposite, and any distinction CCB may attempt to make is a distinction without a difference.

Under our "primary rights" theory, we look to the injury or "harm suffered" in defining a particular "cause of action." Here, as in *Sun 'n Sand*, the "harm suffered" was the diversion of checks that were the property of the employer. Thus, the cause of action in each is one for injury to personal property consisting of checks. Other courts have recognized that checks constitute personal property subject to the limitations period of section 338, subdivision 3 (now section 338, subdivision (c)). (See, e.g., *Bank of America* v. *Security Pacific Nat. Bank* (1972) 23 Cal.App.3d 638, 642 [100 Cal.Rptr. 438]; *Fabricon Products* v. *United Cal. Bank* (1968) 264 Cal.App.2d 113, 117 [70 Cal.Rptr. 50]; *Commercial Cotton Co.* v. *United California Bank* (1985) 163 Cal.App.3d 511, 515 [209 Cal.Rptr. 551, 55 A.L.R.4th 1017].) Further, to the extent this action is viewed as one for the return of specific money, our California Supreme Court has recognized that section 338, subdivision 1 would apply. (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 119, fn. 6 [113 Cal.Rptr. 102, 520 P.2d 726].)

CCB also contends the court erred by ruling that delayed discovery would apply to delay the running of the three-year limitations period. Benitez opened the CCB account in the name of Wisper on April 21, 1989. Before May 8, 1989, he deposited only one check into that account (i.e., check No. 3463 dated April 5, 1989, in the amount of $50,206.12 was deposited on April 25, 1989). The next check was not deposited until May 9, 1989. Because Wisper's complaint was filed on May 8, 1992, delayed discovery applied only to the first check deposited by Benitez and delayed the running of the statute of limitations by only two weeks. Based on the record, we cannot conclude the court erred by impliedly finding that Wisper could not have become aware of this diversion through the exercise of reasonable diligence within a two-week period. (See, e.g., *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 408 [163 Cal.Rptr. 711].) We conclude Wisper's action was not barred by the applicable statute of limitations.

IV-XII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

XIII

*Wisper Is Not Entitled to Prejudgment Interest*

Wisper contends it is entitled to prejudgment interest pursuant to Civil Code section 3287, subdivision (a) (hereafter Civil Code section 3287),

---

*See footnote 1, *ante*, page 948.

which provides in part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." The damages under the facts of this case were not "certain" or "capable of being made certain by calculation," and we conclude Wisper is not entitled to prejudgment interest.

█ Civil Code section 3287 was originally enacted in 1872. Its application to actions other than contract actions, such as tort actions, is well established. (*Marine Terminals Corp.* v. *Paceco, Inc.* (1983) 145 Cal.App.3d 991, 995 [193 Cal.Rptr. 687].) When Civil Code section 3287 was "adopted in 1872, the key distinguishing factor was not . . . whether the cause of action arose in tort or contract, but rather whether the damages were readily ascertainable." (*Levy-Zentner Co.* v. *Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 795 [142 Cal.Rptr. 1].) The *Levy-Zentner* court held that a trial court erred in concluding Civil Code section 3287 could not apply to award prejudgment interest "in tort actions for damage to real or personal property." (*Levy-Zentner, supra,* at p. 798.) Furthermore, a defendant's denial of liability does not make damages uncertain for purposes of Civil Code section 3287. (*Stein* v. *Southern Cal. Edison Co.* (1992) 7 Cal.App.4th 565, 572 [8 Cal.Rptr.2d 907]; *Marine Terminals Corp.* v. *Paceco, Inc., supra,* 145 Cal.App.3d at p. 995.) As one court stated: "Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of [Civil Code] section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." (*Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1060 [98 Cal.Rptr. 153].) As provided by common law before it, Civil Code section 3287 mandates an award of prejudgment interest where " 'the amount of the plaintiff's claim' " can be determined by established market values or by computation. (*Levy-Zentner Co.* v. *Southern Pac. Transportation Co., supra,* at p. 795.) Thus, it is clear that Civil Code section 3287 looks to the certainty of the damages suffered by the plaintiff, rather than to a defendant's ultimate liability, in determining whether prejudgment interest is mandated. An award of prejudgment interest is intended to make the plaintiff whole "for the accrual of wealth which could have been produced during the period of loss." (*Cassinos* v. *Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1790 [18 Cal.Rptr.2d 574].)

█ CCB asserts, however, that Civil Code section 3287 cannot apply in a comparative negligence case because a defendant does not know the amount of damages that ultimately will be awarded against it. CCB does not cite, and we are unable to locate, any authority holding that Civil Code

section 3287 does not apply in a comparative negligence case. Accordingly, we consider this question to be one of first impression. Although CCB concedes that in a comparative negligence case the trier of fact "apportion[s] *liability* between the plaintiff and defendant," CCB asserts it could not know what the apportioned damage award against it could be until a verdict is delivered. (Original italics.)

Prior to 1975, Civil Code section 3287 required an award of prejudgment interest in any negligence case in which a plaintiff's damages were certain or capable of being made certain by calculation. (See, e.g., *Levy-Zentner Co.* v. *Southern Pac. Transportation Co., supra,* 74 Cal.App.3d at pp. 796-799.) Pre-1975 negligence cases applied the "all-or-nothing" contributory negligence system; the defendant would be liable for either all or none of the plaintiff's damages. Therefore, given certain damages suffered by a plaintiff, the only issue disputed would be the defendant's liability for those damages. If the defendant were found liable, then the plaintiff would be entitled to Civil Code section 3287 prejudgment interest.

■ In 1975 the California Supreme Court replaced the contributory negligence system with the "pure" comparative negligence system. (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 828-829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) The "fundamental purpose" of the pure comparative negligence system is "to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties." (*Id.* at p. 829.) A plaintiff's proportionate negligence merely reduces the amount of the judgment against a defendant. (*Ibid.*) (2c) In the case at hand, the jury found by special verdict that both CCB and Wisper were negligent and caused damage to Wisper and that their proportionate negligence was, respectively, 25 percent and 75 percent. The jury also found that the total damages suffered by Wisper and International were $1,445,953.60.[15] The court entered judgment against CCB in favor of International in the amount of $11,820.33. Applying CCB's 25 percent proportionate liability to Wisper's damages of $1,434,133.27 (i.e., $1,445,953.60 less $11,820.33 for the International award), the court entered judgment against CCB in favor of Wisper in the amount of $358,533.32. CCB asserts these "damages"

---

[15]Initially, this verdict amount was not substantially different from the amount sought by the complaint (i.e., $1,399,132.83). (Cf. *KGM Harvesting Co.* v. *Fresh Network* (1995) 36 Cal.App.4th 376, 391 [42 Cal.Rptr.2d 286] [holding a discrepancy of 5.5 percent did not make damages "uncertain"].) However, the apportionment of fault changed the verdict amount significantly, as will be discussed.

awarded against it were necessarily "uncertain" and that Civil Code section 3287 prejudgment interest could not be awarded. As to Wisper, we agree.[16]

■ The case law interpreting Civil Code section 3287 provides some guidance to its application in the instant case. As discussed above, "[t]he policy underlying authorization of an award of prejudgment interest is to compensate the injured party—to make that party whole for the accrual of wealth which could have been produced during the period of loss. [Citations.]" (*Cassinos* v. *Union Oil Co.*, *supra*, 14 Cal.App.4th at p. 1790.)

The court in *Cassinos* also said: "The test for recovery of prejudgment interest under [Civil Code] section 3287, subdivision (a) is whether *defendant* actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount. [Citation.]" (*Cassinos* v. *Union Oil Co.*, *supra*, 14 Cal.App.4th at p. 1789, original italics; *Hartford Accident & Indemnity Co.* v. *Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1307 [260 Cal.Rptr. 190]; *Chesapeake Industries, Inc.* v. *Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 907 [197 Cal.Rptr. 348].) "The statute [Civil Code section 3287] does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor.' [Citations.]" (*Fireman's Fund Insurance Co.* v. *Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154, 1173 [286 Cal.Rptr. 146].) Thus, where the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate. (*Stein* v. *Southern Cal. Edison Co.*, *supra*, 7 Cal.App.4th at p. 573.)

There is a related rule that "the legal interest allowable under [Civil Code] section 3287 cannot be defeated by setting up an unliquidated counterclaim as an offset. [Citations.]" (*Chesapeake Industries, Inc.* v. *Togova Enterprises, Inc.*, *supra*, 149 Cal.App.3d at p. 907.) Wisper would apply this rule to classify the claims as liquidated when each check was deposited, and to allow full prejudgment interest to be paid even allowing the 75 percent setoff for comparative negligence. However, such an approach is erroneous for the reason stated in *Chesapeake Industries Inc.*, *supra*, at page 914: "The fact it is possible to determine with some certainty one figure which is but a single

---

[16]Neither CCB nor Wisper nor International appears to raise the separate issue of prejudgment interest on the check payable to International in the amount of $11,820.66, which the jury found had been paid on a forged endorsement and thus converted by CCB. Clearly, CCB is 100 percent liable for International's certain damages regarding this check. Accordingly, the court properly awarded Civil Code section 3287 prejudgment interest to International on the entire amount of that check from the date it was negotiated by CCB on the forged endorsement and deposited in the CCB account.

*element* in the mathematical calculations involved in deriving a claim does not necessarily render the claim itself either certain or calculable." (Original italics.)

Further, as the court said in *Polster, Inc.* v. *Swing* (1985) 164 Cal.App.3d 427, 435 [210 Cal.Rptr. 567]: "[T]he cases indicate that where there is a large discrepancy between the amount of damages demanded in the complaint and the size of the eventual award, that fact militates against a finding of the certainty mandated by [Civil Code section 3287]." Conversely, where there is no significant disparity between the amount claimed in the complaint and the final judgment, this factor generally tends to show that damages were certain or capable of calculation. (*Stein* v. *Southern Cal. Edison Co.*, *supra*, 7 Cal.App.4th at p. 573; *Credit Managers' Assn.* v. *Brubaker* (1991) 233 Cal.App.3d 1587, 1595 [285 Cal.Rptr. 417].) The greater the disparity between the complaint and the damages, however, the less likely prejudgment interest is appropriate.

The United States Ninth Circuit Court of Appeals dealt with this issue in a case involving equitable indemnity in *National Union Fire Ins.* v. *Showa Shipping Co.* (9th Cir. 1995) 47 F.3d 316. In that case the court held Civil Code section 3287 prejudgment interest was not appropriate in an equitable indemnity action, stating "[defendant] not only disputed whether it was liable, but also, if liable, its liability in proportion to that of the other settling defendants. While the amount [plaintiff] contributed to the settlement of the underlying action was capable of being made certain as of the date of the settlement, [defendant's] share of that settlement was uncertain. Accordingly, the District Court erred in awarding prejudgment interest to [plaintiff]." (*National Union Fire Ins.*, *supra*, at p. 324.) The court found that "an award of prejudgment interest . . . was inappropriate as the damages were not capable of being made certain before a trial and a determination of the relative fault of the parties." (*Id.* at p. 325.)

 Applying these principles to the facts before us, it is clear the amount of damages owed by CCB to Wisper was not subject to calculation until after the completion of a trial. Although the universe of Wisper's damage was calculable—that is, the number of checks totaling in excess of $1.4 million—the question of whether and to what extent CCB had any liability for Wisper's loss was hotly disputed. At the end of the battle, Wisper emerged with a mere 25 percent of its claimed damages. Thus, there is a significant disparity between that which was sought and that which was ultimately found appropriate. Only one element of the claim was certain until the jury made its findings. (*Chesapeake Industries, Inc.* v. *Togova Enterprises, Inc.*, *supra*, 149 Cal.App.3d at p. 914.)

More importantly, it is clear the policy underlying the requirement for prejudgment interest where the damages are deemed "certain" or "capable of being made certain . . ." (Civ. Code, § 3287) is that in situations where the defendant could have timely paid that amount and has thus deprived the plaintiff of the economic benefit of those funds, the defendant should therefore compensate with appropriate interest.

The difficulty in applying such policy in this case is patent from the facts, including Wisper's hiring of an embezzler literally out of jail to manage its funds. It exercised no meaningful oversight, allowing him to steal from it amounts in excess of $50,000 a month. Wisper permitted the embezzler to be a payee on its checks and did not look at its own monthly reports, which demonstrated these massive thefts by its ex-felon employee. It is not surprising under such circumstances that the question of whether CCB was responsible for any portion of the loss was hotly disputed. These facts do not present a case in which CCB could have paid damages which were certain or capable of being made certain, absent a fully litigated apportionment of fault.

Contrary to Wisper's assertions, this is not a case in which the concept of comparative fault should make a great difference in the outcome of the proceeding. Undoubtedly, there may be cases in which a plaintiff who recovers virtually all of the claimed damages, except for a minor percentage based on his or her comparative fault, would still be entitled to an award of prejudgment interest.

This is not such a case, however, because of the vast disparity between the claimed damage and that which was awarded, arising from a factual environment in which it could reasonably be inferred and was decided that most, if not all, of Wisper's loss was a result of its own irresponsible behavior. At the end of the day, Wisper, because of its own carelessness, was found by the trier of fact to have three times the responsibility for the loss than could properly be attributed to CCB for any contribution its negligence made to the loss. The amount of damage could not be determined until after trial. (*Fireman's Fund Ins. Co.* v. *Allstate Ins. Co.*, *supra*, 234 Cal.App.3d at p. 1173; *Stein* v. *Southern Cal. Edison Co.*, *supra*, 7 Cal.App.4th at p. 573.) Hence, the trial court properly found the damages requested were neither certain nor capable of being made certain within the provisions of Civil Code section 3287. The jury was never requested to award any prejudgment interest under Civil Code section 3288. Therefore we find the trial court correctly denied the request for prejudgment interest.

## XIV

*The Court Did Not Abuse Its Discretion by Imposing
Sanctions on Higgs for Discovery Abuses\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

We reverse (1) the denial of Banamex's costs as a prevailing party, and (2) the award of postjudgment interest to Wisper and International from the date of the verdict rather than the date of entry of the judgment. In all other respects the judgment is affirmed. The order imposing sanctions against Higgs is affirmed. We remand this matter for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Benke, Acting P. J., concurred.

**McDONALD, J.**, Concurring and Dissenting.—I concur with the majority opinion, except for part XIII in which Wisper is denied Civil Code section 3287 prejudgment interest. On that issue alone, I respectfully dissent.

I do not believe the California Supreme Court in 1975 intended by its adoption of the pure comparative negligence system in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] to deny plaintiffs Civil Code section 3287 prejudgment interest to which they would have been entitled prior to its *Li* decision. "Pure" comparative negligence did not exist in California in 1872 when the Legislature enacted Civil Code section 3287. For over 100 years, a plaintiff who proved a defendant's negligence and suffered damages that were certain was entitled to prejudgment interest. I question whether, as the majority opinion apparently concludes, the *Li* decision could somehow completely eliminate a plaintiff's entitlement to statutory prejudgment interest in any case in which any significant comparative negligence of a plaintiff is found. Assume a plaintiff is found 1 percent negligent and the defendant is found 99 percent negligent. Should that plaintiff be denied prejudgment interest even though the damages it suffered are certain? I think not. Although the majority opinion apparently leaves open the possibility that a plaintiff in that case might be entitled to prejudgment interest (i.e., where a plaintiff "recovers virtually all of the claimed damages"), it fails to indicate where the "line" is drawn between allowing and disallowing interest. I do not believe there is a rational place to draw the line. For example, if the majority would allow

---

*See footnote 1, *ante*, page 948.

prejudgment interest if a plaintiff is only 20 percent negligent, why would it deny interest if the plaintiff is only slightly more negligent (e.g., 21 percent)?[1] The majority opinion leaves open this "slippery slope" question, which tends to undermine the logic of its position.

The objective of our tort system is to make whole a plaintiff for damages suffered to the extent a defendant is responsible for those damages. To make a plaintiff whole in a comparative negligence case involving a certain amount of damages suffered by a plaintiff, a plaintiff should receive prejudgment interest on that portion of the damages for which the defendant is liable.

Here there was no dispute as to which checks were diverted by Benitez or the amounts of those checks. Wisper's damages consisted solely of those checks diverted by Benitez through the "partial" or comparative negligence of CCB. As the majority opinion notes, the jury expressly found that Wisper and International suffered damages totaling $1,445,953.60, and these damages were not substantially different from the amount sought by their complaint (i.e., $1,399,132.83). Wisper's "damages" were "certain" or at least capable of being calculated and made certain. I believe the ultimate dispute in this case involved CCB's "liability" for Wisper's damages, whether that liability was found to be entire or partial, and not the amount or certainty of the damages. This case is like the many non-negligence cases in which the dispute effectively is over *liability* rather than damages and in which prejudgment interest is awarded. (See, e.g., *Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1060 [98 Cal.Rptr. 153].)

I believe the most closely analogous case law on the entitlement to prejudgment interest is that involving unliquidated setoffs and counterclaims asserted by a defendant in defense of an otherwise liquidated claim asserted by a plaintiff. The California Supreme Court first embraced the principle that a defendant's unliquidated setoff or counterclaim cannot defeat a plaintiff's claim for Civil Code section 3287 prejudgment interest in *Hansen* v. *Covell* (1933) 218 Cal. 622, 629-632 [24 P.2d 772, 89 A.L.R. 670]. In that case the plaintiff filed an action for the value of construction work performed for the defendant, and the defendant claimed an offset for defective workmanship and other amounts. (*Id.* at pp. 624-626.) The California Supreme Court upheld the trial court's award of Civil Code section 3287 prejudgment

---

[1]Many hypotheticals exemplify this dilemma. If the "line" is drawn at 49 percent negligence, why should a plaintiff be denied Civil Code section 3287 interest if it is 50 or 51 percent negligent? Because *Li* abandoned the "all-or-nothing" approach of contributory negligence, I doubt the California Supreme Court would uphold an "all-or-nothing" approach to prejudgment interest.

interest to the plaintiff, stating in part: "[P]laintiffs here are entitled to interest on the balance of the two liquidated principal sums after deduction of the amounts found to be due to the defendant for defective workmanship and [other amounts]." (218 Cal. at p. 631.) That court again noted this principle in *Lineman* v. *Schmid* (1948) 32 Cal.2d 204, 212 [195 P.2d 408, 4 A.L.R.2d 1380], and in *Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 487 [289 P.2d 785, 49 A.L.R.2d 496]. In the latter case the court stated: "California Lettuce correctly contends that the mere pleading of unliquidated counterclaims does not render unliquidated an otherwise certain or determinable debt owing to the plaintiff. The unliquidated counterclaims are given treatment as discounts, not as payments made at the time the debt is due. [Citations.] They do not therefore affect the liquidated or unliquidated character of the debt." (*Ibid.*)

Other California courts consistently have adopted and applied this principle. One court reversed a denial of prejudgment interest, stating:

"Plaintiffs were awarded damages of $5,012.88, computed as follows: as against the sum of $7,312.88 ($7,085.38 paid pursuant to the contract, plus $227.50 as consequential damages) found to be due plaintiffs based upon their rescission of the contract, defendants were allowed an offset of $2,300, representing the reasonable value to plaintiffs of their use of the [automobile]. [Citations.]

"The sum paid by plaintiffs pursuant to the contract was fixed by its terms. Therefore, this element of damage was certain. . . .

"The amount of the offset allowed to defendant was determined on the basis of conflicting evidence. However, that fact did not preclude allowance of prejudgment interest, for where the amount of a claim is certain, but is reduced by reason of an unliquidated setoff, interest properly is allowed on the balance found to be due from the time it became due. [Citations.]

"Since the requirement of Civil Code section 3287 regarding certainty of damages was met, plaintiffs were entitled, as a matter of right, to recover prejudgment interest on the sum awarded from the time such sum became due. [Citations.]" (*Leaf* v. *Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 376 [120 Cal.Rptr. 749].)

Another court observed: "When a plaintiff sues for a liquidated sum and the defendant establishes an offsetting claim based upon defective performance of the same contract by the plaintiff, the amount of the plaintiff's liquidated sum must be offset against the defendant's unliquidated sum as of

the due date of the original debt and *only the balance* bears interest. [Citations.] In this case, Phillips' claim for the balance due under the contract was reduced by the existence of an unliquidated set-off or counterclaim attributable to Phillips' breach of contract; therefore interest was to be allowed only on the balance found to be due after deduction of the offset." (*Burnett & Doty Development Co.* v. *Phillips* (1978) 84 Cal.App.3d 384, 391 [148 Cal.Rptr. 569], original italics; see also *Chesapeake Industries, Inc.* v. *Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 907 [197 Cal.Rptr. 348].) Following this approach, another court reversed a denial of prejudgment interest, stating: "[W]e are persuaded that this case is analogous to situations where the party claiming to be entitled to prejudgment interest holds a liquidated contractual claim subject to an unliquidated setoff for defective performance. In such cases, it is settled that prejudgment interest should be awarded on the balance of the claim after deduction of the unliquidated setoff. [Citations.]" (*Bentz Plumbing & Heating* v. *Favaloro* (1982) 128 Cal.App.3d 145, 152 [180 Cal.Rptr. 223], fn. omitted.)

Therefore, case law clearly supports an award of Civil Code section 3287 prejudgment interest where a plaintiff's contractual claim is liquidated but the defendant asserts an unliquidated offset based on the plaintiff's defective performance of that contract. I believe this factual scenario is closely analogous to the case at hand. Wisper's claim against CCB for negligence clearly was liquidated. Wisper suffered specific monetary losses which were confirmed by the jury's special verdict. Absent CCB's defense of Wisper's own negligence, even the majority presumably would not dispute Wisper's entitlement to prejudgment interest. What then is the effect of CCB's "partial" defense that Wisper was comparatively negligent and partially responsible for its damages? I believe that CCB's defense effectively is in the nature of an unliquidated setoff. Although the majority asserts that CCB could not know the ultimate amount for which it would be held responsible and thus should not be liable for prejudgment interest, a defendant in an action for breach of contract who asserts an unliquidated offset for defective performance is in no better position and yet case law upholds a plaintiff's right to prejudgment interest in those actions. Further, in both scenarios the defendant's unliquidated "offset" arises out of the same transaction as plaintiff's liquidated claim. In the breach of contract situation, the offset for defective performance arises directly out of the parties' actions relating to the contract. In the comparative negligence situation here, the "offset" for Wisper's comparative negligence arises directly out of the parties' actions relating to the negotiation, deposit and withdrawal of certain checks. I do not discern any logical reason to distinguish the two situations. Accordingly, I believe a defendant's defense of the plaintiff's comparative negligence should be treated in the same manner as a defendant's assertion of an

unliquidated offset for defective performance of a contract for purposes of Civil Code section 3287 prejudgment interest.

I believe a defendant's assertion that a plaintiff was comparatively negligent does not make "uncertain" the amount of damages suffered by a plaintiff. Rather, a plaintiff's comparative negligence merely affects the parties' comparative fault or liability and, on a finding of comparative liability, the judgment amount is calculated by simply multiplying the plaintiff's total damages by the defendant's proportionate liability. Given that a plaintiff's total damages are certain (e.g., cash or other liquidated amounts), a plaintiff's comparative negligence should not prevent the plaintiff from being made whole for defendant's negligence with an award of prejudgment interest on the proportionate amount for which the defendant is liable.

Although I, like the majority, find no California case which has dealt with the instant issue, I note that the South Dakota Supreme Court struggled with this issue in *S.D. Bldg. Auth.* v. *Geiger-Berger Assoc.* (S.D. 1987) 414 N.W.2d 15 (*Geiger*). In *Geiger* the court assumed that the amount of damages awarded to the plaintiff (i.e., 70.07 percent of its alleged damages) reflected a reduction for the plaintiff's comparative fault. (*Id.* at p. 20.) In a three-to-two decision, the court held that the plaintiff's damages were "uncertain" and prejudgment interest was properly denied under South Dakota's statute (identical to our Civil Code section 3287),[2] stating in part: "Since a defendant cannot, with any degree of certainty, tender an amount of damages to a plaintiff until a jury sets the proportionate fault, he cannot be held responsible for prejudgment interest under [South Dakota's statute]." (414 N.W.2d at p. 22.) The majority in *Geiger* stated: "The uncertainty lies not in the damages themselves, but rather in the proportion of those damages that a defendant caused, which only a jury can decide." (*Ibid.*) The majority opinion reasoned: "It is . . . not a question in this case of what losses did the plaintiff sustain, but rather what does the defendant owe the plaintiff for the damages which the plaintiff sustained." (*Ibid.*) Accordingly, the majority in *Geiger* interpreted South Dakota's statute effectively to include the words "caused by another" resulting in the statute reading as follows: " 'Every person who is entitled to recover damages (caused by another) certain, or capable of being made certain . . . .' " (*Ibid.*)

However, Justice Sabers in dissent stated: "Prejudgment interest should be allowed even where there is an offset, counterclaim or claim of contributory

---

[2]South Dakota's statute is South Dakota Codified Laws Annotated section 21-1-11, which was originally enacted in 1877. It reads: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt." (*Geiger, supra,* 414 N.W.2d at p. 18.)

negligence. . . . [South Dakota's statute] does *not* say that every person is entitled to prejudgment interest, *unless* there is an offset, counterclaim or claim of contributory negligence. The statute specifies two, and only two, exceptions, i.e., where debtor [is] prevented by 1) law, or 2) creditor from paying the debt." (414 N.W.2d at pp. 27-28 (conc. and dis. opn. of Sabers, J.), original italics.) He concluded: "In summary, plaintiff sued in contract, and in negligence. Plaintiff's damages are supported in contract, and in negligence. To the extent that the defendant's contributory negligence claim was successful, both damages and prejudgment interest *on those damages* have *already been denied.* To deny prejudgment interest a second time on sustainable damages is contrary to the letter and the spirit of [the South Dakota statute]." (*Id.* at p. 28, original italics.)

I find the reasoning in the dissenting opinion of Justice Sabers more compelling than the reasoning of the majority opinion because the dissent focuses on the certainty of damages suffered by a plaintiff, rather than on whether a defendant knows exactly how much to tender to the plaintiff. In any event, the majority opinion in *Geiger* is distinguishable from our situation, because South Dakota, unlike California, does not award prejudgment interest where an unliquidated setoff is asserted. (*Geiger, supra,* 414 N.W.2d 15, 21.) The *Geiger* court noted: "[W]e . . . denied prejudgment interest where a liquidated claim of $7,222,530 was set off by an unliquidated counterclaim award of $300,000. [Citation.]" (*Ibid.*) South Dakota therefore applies its prejudgment interest statute in a much more restrictive manner than California.

The Florida Supreme Court has held that prejudgment interest should be awarded to plaintiffs even if they are contributorily negligent. In a subrogation action, the subrogee's claim against a plumbing company that negligently caused a fire which destroyed an apartment building was subject to the building owner's 25 percent contributory negligence, thereby reducing the judgment against the defendant by that proportion. (*Argonaut Ins. Co.* v. *May Plumbing Co.* (Fla. 1985) 474 So.2d 212, 213 (*Argonaut*).) In a unanimous decision, the Florida Supreme Court upheld the trial court's award of prejudgment interest, reversing a district court of appeal's opinion that "the comparative negligence factor made the award of damages uncertain and, thus, unliquidated." (*Ibid.*) The court noted that there are two theories upon which awards of prejudgment interest are justified—the "penalty theory" and the "loss theory." (*Id.* at pp. 214-215.) The "penalty theory" views prejudgment interest as a "penalty" for a "defendant's 'wrongful' act of disputing a claim found to be just and owing." (*Id.* at p. 215.) The court noted: "The distinction between liquidated and unliquidated claims is closely linked to this 'penalty theory' of prejudgment interest. To punish a defendant for

failure to pay a sum which was not yet certain or which he disputed would be manifest injustice. But where the amount is certain and the defendant refuses to surrender it because of defenses determined to be meritless, the defendant may properly be punished for abuse of his privilege to litigate. Under the 'loss theory,' however, neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest. Rather, the loss itself is a wrongful deprivation by the defendant of the plaintiff's property. Plaintiff is to be made whole from the date of the loss once a finder of fact has determined the amount of damages and defendant's liability therefor." (*Ibid.*) Because Florida has long followed the "loss theory," the court held that the subrogee was entitled to prejudgment interest as an element of its damages. (*Id.* at pp. 214-215.) Although *Argonaut* is distinguishable from our situation because of Florida's differing and apparently more liberal approach to the award of prejudgment interest, its discussion of the "penalty theory" and "loss theory" is helpful in analyzing California cases which often cite either or both ideas as reasons to award prejudgment interest.

The majority opinion here relies heavily on the "penalty theory," concluding it is not fair to penalize a defendant for failing to pay an amount to plaintiff unless it knows exactly how much it owes the plaintiff. However, I prefer to place the emphasis on the plaintiff's position and recoupment of its loss. The primary purpose of our tort law is to make a plaintiff whole for damages suffered due to tortious actions by others. Therefore California tort law begins with the "loss theory" of damages. A plaintiff, like Wisper, generally should be made whole for damages suffered due to the negligence of another, such as CCB. I believe Civil Code section 3287 should be construed consistently with that purpose and, accordingly, Wisper should be entitled to prejudgment interest to make it whole for damages it suffered due to the 25 percent comparative negligence of CCB. Construing Civil Code section 3287 in this manner, I conclude the damages that must be "certain" are those damages suffered by the plaintiff, without regard to any setoffs, counterclaims or comparative negligence asserted by the defendant as a defense. Here there are certain damages and Wisper should be awarded prejudgment interest on the amount of damages for which CCB was found proportionately responsible. Only by interpreting Civil Code section 3287 in this manner can Wisper be made whole for loss of the use of those funds due to CCB's negligence. The majority's concern with whether a defendant knows exactly how much it might have to pay if found liable is merely a secondary concern and is collateral to the primary purpose of tort law to make plaintiffs whole. The majority's disposition of this issue places more emphasis on this collateral concern than is warranted in light of the purposes of our tort law.

I disagree with the majority's heavy reliance on whether CCB actually knew the amount it owed Wisper. The majority reasons that CCB could not know how much it owed Wisper, because CCB asserted the defense of comparative negligence against Wisper. However, like the setoff and counterclaim cases discussed above, Wisper's damages were "certain" and its entitlement to Civil Code section 3287 prejudgment interest should not be defeated by an unliquidated claim or defense which CCB raises as a partial "offset" to Wisper's damages. In fact, even in pre-*Li* cases, when the defense of contributory negligence was raised the plaintiff would not know the "certain" amount of damages for which it was liable until the issue of liability was determined. If contributory negligence was established then no amount was owed.

The majority's agreement with the *Showa* case (*National Union Fire Ins. v. Showa Shipping Co.* (9th Cir. 1995) 47 F.3d 316) is ill-founded. Admittedly there are close parallels between equitable indemnity (in *Showa*) and comparative negligence (in this case) for purposes of Civil Code section 3287. However, I would not follow the approach of the United States Ninth Circuit Court of Appeals in the *Showa* opinion. That opinion failed to cite any California or other case in support of its holding, and contained no analysis of the pertinent issues and historical background or underlying objectives of Civil Code section 3287. Rather, it summarily disposed of the prejudgment interest issue with the language quoted by the majority in part XIII, *ante*. Further, and more importantly, the *Showa* opinion failed to acknowledge, much less distinguish, a factually apposite California case in which Civil Code section 3287 prejudgment interest was awarded. In *E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366 [187 Cal.Rptr. 879], the Fourth District Court of Appeal, Division Two, unanimously held that two indemnitees were entitled to Civil Code section 3287 prejudgment interest from the time they paid their portions of a personal injury judgment. Rejecting a contention that their damages were not certain, the court in *E. L. White, Inc.* stated:

"Huntington Beach claims that the damages were not certain or ascertainable until judgment was entered in this indemnity action, because the amount of White and Royal Globe's recovery was uncertain until the trial court made its determination of comparative fault under the principles set forth in *American Motorcycle*. This argument is not convincing.

"Although we have found no cases directly on point, we conclude that the present situation is analogous to similar cases in which prejudgment interest has been allowed. In *Hansen* v. *Covell* (1933) 218 Cal. 622 . . . , the Supreme Court held that a plaintiff was entitled to prejudgment interest even

though the plaintiff's certain and liquidated claim under a contract was reduced by a defendant's unliquidated set-off or counterclaim. [Citations.] . . . Here, White and Royal Globe's *claim for indemnity was certain* in amount from the date the underlying judgments were satisfied, *but was subject to a possible reduction if White was found to have been more than vicariously liable. The possibility of that reduction, or even an actual reduction, does not render White and Royal Globe's damages any less certain.*" (*E. L. White, Inc.* v. *City of Huntington Beach, supra,* 138 Cal.App.3d 366 at pp. 377-378, italics added.) Had the *Showa* court considered the effect of this California decision, I believe its disposition would have been different. The court in *E. L. White* relied on the same analogous situation as do I. The court noted that unliquidated setoffs asserted by a defendant do not make an indemnity claim uncertain. (*Ibid.*) The court held that the possibility that the plaintiff's comparative fault might reduce the defendant's liability in the equitable indemnity action did not make the plaintiff's damages uncertain. (*Id.* at p. 378.) It further commented, albeit in dictum, that an actual reduction for the plaintiff's comparative fault would not make the plaintiff's damages uncertain. (*Ibid.*) The court therefore awarded Civil Code section 3287 prejudgment interest to the plaintiff. (138 Cal.App.3d at p. 378.)

The situation in the instant matter is factually apposite to that in *E. L. White*. The apportionment of comparative fault in an equitable indemnity action is no different from that in a comparative negligence action. Accordingly, a reduction in Wisper's award due to apportionment of comparative fault should not preclude it from receiving Civil Code section 3287 prejudgment interest on the balance attributed to CCB's comparative fault.

Finally, I believe the express language of Civil Code section 3287 supports the interpretation I propose. Civil Code section 3287, subdivision (a) begins: "Every person who is entitled to recover damages certain . . . ." Thus, the statute focuses on the *plaintiff*, not the defendant, and whether the plaintiff's damages are certain. The majority's focus on whether the *defendant* knew exactly how much it would have to pay the plaintiff changes the meaning of the statute and has no basis in the express language of Civil Code section 3287.

I believe that the majority's stance on this issue is affected by the substantial evidence of Wisper's negligence in hiring and supervising Benitez and failing to monitor its own bank statements. However, the majority fails to accord sufficient consideration to the fact the jury also found CCB negligent and a cause of Wisper's damages. Absent Wisper's comparative negligence, I doubt the majority would deny Civil Code section 3287

prejudgment interest to Wisper based on the negligence of CCB. California abandoned the "all-or-nothing" contributory negligence system over 20 years ago; California should not now revive that system in the context of Civil Code section 3287 prejudgment interest.

CCB should be liable for prejudgment interest to the extent of its 25 percent proportionate liability. A primary purpose of our tort law, including our comparative negligence system, and of Civil Code section 3287 is to make a plaintiff whole for certain damages suffered by a plaintiff, and the denial of prejudgment interest when a plaintiff's damages are undisputed and certain would be contrary to this important purpose. Accordingly, I respectfully dissent from the majority opinion's disposition of the Civil Code section 3287 prejudgment interest issue as to Wisper. I would reverse the trial court's denial of prejudgment interest and remand for calculation of the appropriate amount of prejudgment interest to be awarded Wisper. In so doing, I would instruct the trial court to award Wisper Civil Code section 3287 prejudgment interest on 25 percent of the amount of each check diverted by Benitez and deposited into CCB's Wisper account from the date of loss, which I would set as the date of each deposit. Upon deposit into the account on which Benitez was the sole signatory, Benitez at that time obtained sole control over the funds and created the loss to Wisper. (See, e.g., *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642] [affirming award of Civil Code section 3287 prejudgment interest from date of loss]; *Stein* v. *Southern Cal. Edison Co.* (1992) 7 Cal.App.4th 565, 573 [8 Cal.Rptr.2d 907].)

A petition for a rehearing was denied October 23, 1996, Mc Donald, J., was of the opinion that the petition should be granted. The petition of defendants and appellants for review by the Supreme Court was denied December 23, 1996.