[Civ. No. 42323. First Dist., Div. Four. Aug. 30, 1978.]

BURNETT & DOTY DEVELOPMENT COMPANY,
Plaintiff, Cross-defendant and Appellant, v.
C. S. PHILLIPS et al., Defendants, Cross-complainants and Appellants.

COUNSEL

Ryersen & Comstock and Patrick W. Emery for Plaintiff, Cross-defendant and Appellant.

Behrens, Nelson & Mackey, Robert W. Mackey, Sedgwick, Detert, Moran & Arnold and David E. Bordon for Defendants, Cross-complainants and Appellants.

OPINION

CHRISTIAN, J.—Burnett & Doty Development Company sued C. S. Phillips and Fidelity & Deposit Company of Maryland, alleging failure on the part of Phillips to complete contracted-for work on a residential development being constructed by Burnett & Doty. Fidelity & Deposit Company of Maryland was sued as surety on Phillips' performance bond. Phillips cross-complained against Burnett & Doty, alleging that balances were due on the contract and for contract "extras." A bench trial resulted in a judgment in favor of Burnett & Doty on its complaint against Phillips and Fidelity in the amount of $33,707; this amount was reduced by a set-off in the amount of $22,365 awarded to Phillips on the cross-complaint. Both sides have appealed; we affirm the judgment.

In 1972, Burnett & Doty began the development of a subdivision in Windsor known as Park Glen Subdivision. By written contract with Burnett & Doty, Phillips undertook to perform site work on the project. This work included clearing and grubbing, rough earth work, sewers, storm drains, initial base rock, curbs, gutters and sidewalks, base rock on streets, street paving, fire hydrants, street monuments and signs, and the placement of rip rap, bank planting and fencing along a flood control channel. It was agreed that performance would be completed by October 31, 1972. A performance bond was posted with Fidelity as surety.

On the anticipated completion date, the only work which had been completed was the clearing and grubbing and rough earth work. The sewer and water lines had not been completed; they were not connected until November 20, 1972. Placement of the storm drains had not been completed, and Phillips had not yet commenced construction of the curbs, gutters, sidewalks, aggregate base, street paving, rip rap, fencing, bank planting, street monuments or signs.

The trial court found that Phillips' breach of the agreement forced discontinuance of Burnett & Doty's business for a period of five months, resulting in a loss of profits to Burnett & Doty in the amount of $35,574. "During the period in question, Burnett had been and would have been able to produce houses at the average rate of 3.3 homes per month and at an average profit of $2,156 per home. By the forced discontinuance of its business, Burnett was prevented from producing 16.5 homes for a loss of profit of $35,574." The court also found that, as a result of the breach of the agreement by Phillips, Burnett & Doty sustained an increased cost in the construction of two homes in the Park Glen Subdivision in the amount of $4,974. The court further found that Burnett & Doty sustained an increased interest expense on the Park Glen Subdivision loan in the amount of $1,259. The latter two aspects of the damages award to Burnett & Doty are not contested by Phillips and Fidelity.

The trial court found, however, that Burnett & Doty realized a profit of $8,100 upon the ultimate sale of the 42 homes in the Park Glen Subdivision, and offset that amount against the award to Burnett & Doty. On Phillips' cross-complaint against Burnett & Doty the trial court awarded judgment against Burnett & Doty for the $22,365 balance owing to Phillips under the contract. The trial court found as follows:

"21. BURNETT has failed to pay to PHILLIPS, under the terms of the agreement and in breach thereof, the sum of $22,365.00. There is due and owing from BURNETT to PHILLIPS said amount and PHILLIPS has been damaged thereby. PHILLIPS has failed to establish the right to recovery of any amount due in excess of said $22,365.00. Said amount is in accord with the agreed contract price of $127,458.63, prepared by PHILLIPS. BURNETT has paid to PHILLIPS the sum of $105,093.18."

It concluded as follows:

"8. By reason of said breach by PHILLIPS, assured by FIDELITY, BURNETT has sustained a loss of profit to its business in the amount of $35,574.00, and has been damaged thereby. There should be credited to PHILLIPS the amount of $8,100.00 consisting of the profit realized by BURNETT on the sale of homes in Park Glen Subdivision. BURNETT should recover from PHILLIPS and FIDELITY a net loss of profit of $27,474.00.

"12. PHILLIPS should have judgment against BURNETT on its amended cross-complaint in the amount of $22,365.00, which should be an offset to

the judgment of BURNETT on its complaint against PHILLIPS and FIDELITY."

■ Phillips and Fidelity contend that there is no substantial evidence to support the trial court's finding that Burnett & Doty's business sustained a loss of profits as the proximate result of Phillips' breach of contract. ■ It is also contended that such lost profits are not properly recoverable because they were not within the contemplation of the parties when the contract was entered into.

■ An injured party may recover for a breach of contract the amount which will compensate it "for all the detriment proximately caused [by the breach], or which, in the ordinary course of things, would be likely to result [from the breach]." (Civ. Code, § 3300.) The damages awarded should, insofar as possible, place the injured party in the same position it would have been had the contract properly been performed, but it may not be awarded more than the benefit which it would have received had the promisor performed. (Civ. Code, § 3358; *Steelduct Co.* v. *Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 648-649 [160 P.2d 804]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 123 [135 Cal.Rptr. 802].) ■ Damages may be awarded for breach of contract for those losses which naturally arise from the breach, or which might reasonably have been foreseen by the parties at the time they contracted, as the probable result of the breach. (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co., supra,* 66 Cal.App.3d at p. 125.) Damages must be reasonable, however, and the promisor is not required to compensate the injured party for injuries that it had no reason to foresee as the probable result of its breach when it made the contract. (*Coughlin* v. *Blair* (1953) 41 Cal.2d 587, 603 [262 P.2d 305]; *Ely* v. *Bottini* (1960) 179 Cal.App.2d 287, 294 [3 Cal.Rptr. 756].)

Where the injured party shows that, as a reasonable probability, profits would have been earned on the contract except for its breach, the loss of the anticipated profits is compensable. (*Nelson* v. *Reisner* (1958) 51 Cal.2d 161, 171-172 [331 P.2d 17]; *Fisher* v. *Hampton* (1975) 44 Cal.App.3d 741, 747 [118 Cal.Rptr. 811].) Where business activity has been interrupted by a breach of contract, damages for the loss of prospective profits that otherwise might have been made from its operation are generally recoverable where such damages are shown to have been foreseeable and reasonably certain. (See *Grupe* v. *Glick* (1945) 26 Cal.2d 680, 692 [160 P.2d 832]; *Guntert* v. *City of Stockton* (1976) 55 Cal.App.3d 131, 143 [126 Cal.Rptr. 690, 127 Cal.Rptr. 602]; see also *S. Jon Kreedman & Co.* v.

*Meyers Bros. Parking-Western Corp.* (1976) 58 Cal.App.3d 173, 184-185 [130 Cal.Rptr. 41]; *Mahoney* v. *Founders' Ins. Co.* (1961) 190 Cal.App.2d 430, 436 [12 Cal.Rptr. 114]; *Jegen* v. *Berger* (1946) 77 Cal.App.2d 1, 16 [174 P.2d 489].) "[W]here the operation of an established business is prevented or interrupted, as by a ·. . . breach of contract . . . damages for the loss of prospective profits that otherwise might have been made from its operation are generally recoverable for the reason that their occurrence and extent may be ascertained with reasonable certainty from the past volume of business and other provable data relevant to the probable future sales." (*Grupe* v. *Glick, supra,* 26 Cal.2d 680, 692.)

 Burnett & Doty presented evidence that its sole business from August 1971 through November 1974 was that of the construction of single family residences. During the 38-month period commencing in August of 1971 and ending in November of 1974, Burnett & Doty operated actively for 33 months. Only during the period of mid-November 1972 to mid-April 1973—the forced shutdown period caused by Phillips' breach of contract—was the company unable to produce homes. During the 33 working months, Burnett & Doty constructed 109 houses at an average rate of 3.3 houses per month. The working experience of the business thus supports the trial court's finding that during the 5-month interruption in its business caused by the breach of the contract Burnett & Doty was prevented from developing an average of 16.5 homes. There was evidence that during the 38-month period beginning in August of 1971 and ending in November of 1974, the lowest average profit realized on any Burnett & Doty project was $2,156 per home in the Oak Creek Park Subdivision. Multiplying this lowest average profit figure by the 16.5 homes which Burnett & Doty would have constructed during the forced 5-month shutdown period yields the $35,574 loss of profits found by the trial court to have occurred during the interruption of Burnett & Doty's business. (See *Hacker etc. Co.* v. *Chapman V. Mfg. Co.* (1936) 17 Cal.App.2d 265, 267-268 [61 P.2d 944].) The parties planned on the contract being fully performed by October 31, 1972. C. S. Phillips, Sr., personally wrote into the contract at the time of its execution, "work to be completed by October 31, 1972." This evidence supports the determination that the parties contemplated or should have contemplated at the time of contracting that the interruption of Burnett & Doty's business, and attendant loss of profits, was likely to result from Phillips' failure of timely performance. Such losses were a foreseeable result of any extensive delay in performance of the agreement.

We recognize that it has been stated that ". . . the plaintiff will not be allowed to recover damages for a possible loss of profits on other contracts which he might have made if he had not been waiting for work to be furnished to him under the provisions of the instant contract." (23 Cal.Jur.3d, Damages, § 79, p. 154; see *Palm* v. *Planada Development Corp.* (1917) 175 Cal. 771 [167 P. 381].) In *Palm,* such lost profits from other work that would have been performed but for the breach of contract was denied by the court on the ground that " 'no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides.' " (175 Cal. at pp. 773-774, quoting Civ. Code, § 3358.) However, such an award of lost profits does not put the nonbreaching party in a better position than he would have been in had the contract been performed; rather, the award places the nonbreaching party in as good a position as he would have been in had the contract been timely performed. Thus, the true test is whether in the particular case the evidence supports findings that the loss was within the contemplation of the contracting parties and that as a matter of reasonable probability the claimed damage resulted from the breach. (Civ. Code, § 3300.)

■ Phillips contends that the court should have awarded it prejudgment interest, pursuant to Civil Code section 3287, on the $22,365 awarded on the cross-complaint. Prejudgment interest generally is recoverable where the damages are liquidated or, although unliquidated, can be established with reasonable certainty or are calculable by reference to a well established market value. (*Nicholson-Brown, Inc.* v. *City of San Jose* (1976) 62 Cal.App.3d 526, 533 [133 Cal.Rptr. 159].) When a plaintiff sues for a liquidated sum and the defendant establishes an offsetting claim based upon defective performance of the same contract by the plaintiff, the amount of the plaintiff's liquidated sum must be offset against the defendant's unliquidated sum as of the due date of the original debt and *only the balance* bears interest. (*Burgermeister Brewing Corp.* v. *Bowman* (1964) 227 Cal.App.2d 274, 285 [38 Cal.Rptr. 597]; see *Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740, 754-755 [47 P.2d 273]; see also *Homes & Son Construction Co., Inc.* v. *Bolo Corp.* (1974) 22 Ariz.App. 303 [526 P.2d 1258, 1261-1262].) In this case, Phillips' claim for the balance due under the contract was reduced by the existence of an unliquidated set-off or counterclaim attributable to Phillips' breach of contract; therefore interest was to be allowed only on the balance found to be due after deduction of the offset. As the amount of damages awarded to Burnett & Doty for Phillips' breach of contract exceeds appellant's demand, "there remains nothing on which to

compute or allow interest." (*Union Sugar Co.* v. *Hollister Estate Co., supra,* 3 Cal.2d at p. 755.) There was no error.

■ Burnett & Doty contends that the court should have awarded it damages for increased overhead. expenses in the amount of $15,165 allegedly caused by Phillips' breach of the contract. But the court awarded Burnett & Doty the gross profits which they would have earned during the five-month shutdown period had it not been for the breach. Burnett & Doty was not entitled to both an award of lost profits and its fixed or overhead costs during that period. (See *Guntert* v. *City of Stockton, supra,* 55 Cal.App.3d 131, 148-149.) "To award the plaintiff not only lost profit but also the cost of producing the profit causes a double recovery." (*Guntert* v. *City of Stockton, supra,* at p. 149.)

The judgment is affirmed. The parties will bear their own costs on appeal.

Caldecott, P. J., and Rattigan, J., concurred.