[No. D049191. Fourth Dist., Div. One. Aug. 13, 2008.]

GREAT WESTERN DRYWALL, INC., Plaintiff, Cross-defendant and Appellant, v.
ROEL CONSTRUCTION CO., INC., Defendant, Cross-complainant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I and III.

COUNSEL

Sellar, Hazard, Manning, Ficenec & Lai and Aaron C. Hancock for Plaintiff, Cross-defendant and Appellant.

Procopio, Cory, Hargreaves & Savitch and Steven R. Borer for Defendant, Cross-complainant and Appellant.

OPINION

McCONNELL, P. J.—Great Western Drywall, Inc. (Great Western), and Roel Construction Co., Inc. (Roel), appeal a judgment entered after a bench trial on their respective actions arising from a construction subcontract. Roel's sole contention is that the court erred by awarding Great Western prejudgment interest on its liquidated contract claims since Roel's damages exceed Great Western's damages and entirely offset the interest award.

Great Western challenges the sufficiency of the evidence to support certain items of damage the court awarded Roel, contends the court erred as a matter of law by awarding Roel a cleanup contribution not directly attributable to Great Western, and abused its discretion by denying Great Western prejudgment interest on unliquidated contract claims. Great Western also appeals a postjudgment order in which the court denied it penalty interest under Business and Professions Code section 7108.5 for Roel's failure to promptly make progress payments.

We find in Roel's favor on its appeal, and we find in Great Western's favor on the cleanup contribution issue. In all other respects, we affirm the judgment. We also affirm the postjudgment order.

## FACTUAL AND PROCEDURAL BACKGROUND

Roel was the general contractor on the Renaissance Marina condominium project in San Diego, which consists of 218 units in two towers. In April 2001 Roel and Great Western entered into a subcontract for Great Western to install metal studs, drywall, lath and plaster and the exterior insulation finish system at the project.

Great Western worked on the project for about two years. The original amount of the subcontract was approximately $4.5 million, but numerous approved change orders increased the amount to more than $7.7 million. Roel did not approve numerous change order requests (COR's) by Great Western, and in July 2003 Great Western recorded a mechanic's lien against the Renaissance Marina property.

In September 2003 Great Western sued Roel for breach of contract and related counts, alleging Roel underpaid it on extra work. Roel cross-complained against Great Western for breach of contract and related counts, and negligence. The cross-complaint alleged Roel was damaged by Great Western's failure to adequately perform its work, by its abandonment of the project before its work was complete, and by its damage to the work of others, such as the scratching of window glass. Each breach of contract claim for damage to the work or property of others was alternatively pleaded as a tort claim.[1]

On November 29, 2005, after a four-day bench trial, the court issued a written ruling that awarded Great Western $332,106 and awarded Roel $320,848. The award to Roel included $156,993 for glass replacement, and additional amounts to repair other property damages Great Western caused. The award did not specify whether Roel's recovery for property damages was on a contract or tort theory. The award to Great Western included $251,263 in COR's that Roel admitted in discovery were undisputed, and $57,534 in prejudgment interest on that amount. The court found there was no prevailing party for purposes of fees and costs. The ruling ordered Great Western "to prepare a judgment reflecting this decision if a Statement of Decision is not requested by either party."

On December 1, 2005, Roel moved ex parte for stay of entry of judgment, arguing the award of prejudgment interest to Great Western on the amount of undisputed COR's was improper based on the facts and established case law. No party asked for a statement of decision.

The trial judge, Thomas LaVoy, was scheduled to retire on December 8. On December 5, Judge LaVoy granted a stay pending a noticed hearing requesting a modification of the court's "tentative decision" and a showing of good cause. On December 7, after receiving a joint letter from the parties, Judge

---

[1] Additionally, Great Western sued the owner of the condominium project, and Roel's indemnity company joined in its cross-complaint. Those entities are not involved in this appeal.

LaVoy issued a tentative ruling to amend its original ruling to delete an amount awarded Roel for plaster repairs.

Also on December 7, Roel and Great Western jointly applied ex parte to the independent calendar judge, Ronald Prager, stating that because of Judge LaVoy's imminent retirement, "the parties seek guidance from this court on how it wishes them to proceed with respect to asserting objections to the tentative decision." The ex parte hearing was not reported, but on February 1, 2006, Judge Janis Sammartino entered a judgment that awarded Great Western $332,106 on its complaint, which included $57,534 in prejudgment interest on the sum of $251,263, and awarded Roel $315,398 on the cross-complaint.

On June 1, 2006, the parties filed a stipulation for amended judgment. The amendment corrected several computational errors in Judge LaVoy's November 29, 2005 ruling. Further, the amendment decreased the prejudgment interest award to Great Western by $20,572.86, as the parties agreed Roel was entitled to an offset of that amount for contract-based counterclaims. The stipulation reserved to Roel "its objection to the entire award of prejudgment interest."

On June 2, Judge Sammartino entered an amended judgment that awarded Great Western $328,819.69, which included prejudgment interest of $36,961.14, and awarded Roel $326,300.75. Roel filed a notice of appeal on August 4, within 60 days of Great Western's service of notice of the amended judgment.

Great Western then moved for interest and attorney fees under Business and Professions Code section 7108.5, which penalizes a contractor for violating its obligation to timely pay a subcontractor. On July 6, 2006, Judge Prager denied the motion, explaining Great Western's recovery was significantly less than it requested; the court previously denied fees and costs unless Great Western presented other factors at posttrial motions, which it did not do; and it failed to prove Roel's conduct was not in good faith. On August 21, Great Western filed its notice of appeal of the amended judgment and the postjudgment order.

## DISCUSSION

## I

### *Timeliness of Roel's Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II

### *Substantive Merits of Roel's Appeal/Prejudgment Interest*

Roel's sole challenge to the judgment is the award of $36,961.14 in prejudgment interest to Great Western on the $251,263 the court awarded it on its contract claim for undisputed COR's. Again, the court originally awarded Great Western $57,534 in prejudgment interest, but the parties stipulated that Roel was entitled to an offset for its contract-based damages, which lowered prejudgment interest to $36,961.14 and resulted in an amended judgment. Roel contends Great Western is entitled to *no* prejudgment interest because the entire amount of Roel's recovery, $326,300.75, is an offset since it arose from Great Western's deficient performance of the subcontract. Great Western counters that Roel's *tort* damages may not be offset against Great Western's recovery on liquidated *contract* damages.

■ Civil Code section 3287, subdivision (a) provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." "Under this provision, prejudgment interest is allowable where the amount due plaintiff is fixed by the terms of a contract, or is readily ascertainable by reference to well-established market values. [Citations.] On the other hand, interest is not allowable where the amount of the damages depends upon a judicial determination based upon conflicting evidence . . . ." (*Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 375 [120 Cal.Rptr. 749].)

■ Prejudgment interest on liquidated damages is an element of compensatory damages. (*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 [148 Cal.Rptr. 22, 582 P.2d 109].) "The policy underlying authorization of an award of prejudgment interest is to compensate the injured party—to make that party whole for the accrual of wealth which could have been produced

---

*See footnote, *ante*, page 761.

during the period of loss." (*Cassinos v. Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1790 [18 Cal.Rptr.2d 574].) "[I]n situations where the defendant could have timely paid [a certain] amount and has thus deprived the plaintiff of the economic benefit of those funds, the defendant should therefore compensate with appropriate interest." (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 962 [57 Cal.Rptr.2d 141].) "It has long been settled that [Civil Code] section 3287 should be broadly interpreted to provide just compensation to the injured party for loss of use of money during the prejudgment period." (*Gourley v. State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 132 [3 Cal.Rptr.2d 666, 822 P.2d 374].)

The " 'mere pleading of unliquidated counterclaims does not render un-liquidated an otherwise certain or determinable debt owing to the plaintiff. The unliquidated counterclaims are given treatment as discounts, not as payments made at the time the debt is due.' " (*Muller v. Barnes* (1956) 139 Cal.App.2d 847, 850 [294 P.2d 505]; *Wisper Corp. v. California Commerce Bank, supra,* 49 Cal.App.4th at p. 965.) In other words, an award of unliquidated damages to a cross-complainant is a setoff against prejudgment interest awarded a plaintiff for liquidated damages.

As the court explained in *Hansen v. Covell* (1933) 218 Cal. 622, 630–631 [24 P.2d 772], such an offset is allowed "on the theory that the contractor is entitled to interest only on such amount of the use of which he has been deprived during the period of default." "[T]he court may properly allow interest only on the balance found to be due after deduction of such offsets . . ." because "to that extent only has the plaintiff been damaged." (*Id.* at p. 631.) In *Hansen,* offset was allowed where contractors sued an owner for the unpaid balance on a building construction contract, and the owner cross-complained against the contractors alleging abandonment of the project and seeking costs of completion and repair of defective work. (*Id.* at pp. 624–625, 630–631.)

Roel also relies on *Burgermeister Brewing Corp. v. Bowman* (1964) 227 Cal.App.2d 274, 285 [38 Cal.Rptr. 597] (*Burgermeister*), in which the court explained: "It is settled that when a plaintiff sues for a liquidated sum and the defendant establishes an offsetting claim based upon defective workmanship or defective performance *of the same contract* by the plaintiff, the amount of the former is to be offset against the latter *as of the due date of the original debt* and only the balance bears interest." (First italics added.)

The *Burgermeister* court further stated: "We are unable to distinguish between defective performance and no performance at all. If a plaintiff who

renders defective performance is not entitled to receive interest except on the balance after allowance of the offset we can conceive of no sound reason not to apply the same rule when the breach consists of a refusal (by wrongful termination) to *perform the plaintiff's obligations under the contract* at all. And we so hold. As we see it, if, when the day of reckoning is reached, it has been decided that a defendant is entitled to an offset, this is a finding that the plaintiff was never entitled to more than the net amount. The defendant was therefore justified in having withheld payment from plaintiff even though the amount of his offset had not been then judicially determined." (*Burgermeister, supra*, 227 Cal.App.2d at pp. 285–286, italics added; see also *Burnett & Doty Development Company v. Phillips* (1978) 84 Cal.App.3d 384, 387 [148 Cal.Rptr. 569].)

▮ Great Western asserts that under the above cases only unliquidated contract damages may be offset from liquidated contract damages. The cases, however, do not consider whether unliquidated tort claims may ever be offset against liquidated contract claims. " 'A decision is not even authority except upon the point actually passed upon by the Court and directly involved in the case.' " (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1190 [101 Cal.Rptr.2d 532].)

Great Western erroneously asserts that "[w]hile Roel could have asserted many of its tort claims as breaches of contract, it chose not to." Roel's cross-complaint alleged property damage claims under *both* the breach of contract and tort counts, and the court's ruling does not reveal which theory it relied on for the property damage award. Roel cited section 9.5b of the subcontract, which allows Roel damages for a subcontractor's default under the subcontract, and a 25 percent markup for profit and overhead. The subcontract defines the term "default" as including the failure to diligently perform the work, maintain the schedule or provide quality workmanship. The court specifically found certain claims were default items and awarded the markup on them, but on the property damage claims the court disallowed a markup, finding they were not default items.

Contrary to Great Western's assertion, however, that raises no presumption the award for property damage claims could not have been for breach of contract. Rather, the court could have relied on section 5.7 of the subcontract, which provides that a breach of contract includes a subcontractor's damage to the work of another subcontractor or the property of a third party, or section 15.3f, which requires a subcontractor to protect the work of others and to repair and replace damaged property at its own expense. Great Western submits that Roel relied only on section 9.5b of the subcontract, but Roel

specifically raised section 15.3f at trial, and the entire subcontract was admitted into evidence for the court's review. Roel points to no election by Roel to pursue a tort theory, and it does not appear that a tort theory offered any advantage over a breach of contract theory.[2] Evidence that Roel did not submit property damage claims to Great Western in the form of change orders does not necessarily indicate Roel elected to proceed in tort.

■ In any event, we conclude that even if the court intended to award damages for negligence as opposed to breach of contract, Roel is entitled to a setoff of its entire award. It is undisputed that Roel's damages arose entirely from Great Western's deficient performance of the contract, and Roel's mere inclusion of an alternative count for negligence in its cross-complaint, and any arbitrary reliance by the trial court on one theory over another, should not adversely affect Roel's setoff rights.[3] Both parties had claims against each other under the subcontract, thus setoff serves the interests of justice and the purposes of the prejudgment interest statute. Another ruling would elevate form over substance. (Civ. Code, § 3528; see *Mechanical Contractors Assn. v. Greater Bay Area Assn.* (1998) 66 Cal.App.4th 672, 687, fn. 5 [78 Cal.Rptr.2d 225].) Because Roel's award exceeds Great Western's award, even after the adjustment to Roel's award for the cleanup contribution, addressed below, Great Western may not recover any prejudgment interest.

### III

*Great Western's Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[2] The reporter's transcript includes neither opening statements nor closing arguments.

[3] Great Western cites *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390 [97 Cal.Rptr.2d 151, 2 P.3d 1], for the proposition that "[w]ith respect to contract and tort claims, . . . even when pleaded in the same action, they are 'apples and oranges.' " In *Kransco*, the court held "a liability insurer cannot assert the comparative bad faith of its insured in the underlying third party litigation as an affirmative defense in a bad faith action brought against it." (*Id.* at p. 394.) The court noted that the distinction between tort and contract claims *by opposing parties in the insurance context* caused Montana's high court to "reject comparative bad faith as a defense in a bad faith action against an insurer ('the [insurer's] tort cannot be offset comparatively by the [insureds'] contract breach') and characterize the differing legal concepts as 'apples and oranges.' " (*Id.* at p. 403.) *Kransco* is inapplicable here, where Roel pleaded both tort and contract claims arising from the same defective performance of the subcontract.

*See footnote, *ante*, page 761.

## DISPOSITION

The judgment is reversed insofar as it awards Great Western $36,961.14 in prejudgment interest on its liquidated contract claims and awards Roel $26,287 for a cleanup contribution. The judgment is affirmed in all other respects. The order denying Great Western penalty interest is affirmed. The parties are to bear their own costs on appeal.

Haller, J., and McIntyre, J., concurred.