Filed 1/24/25  Khorshidi v. Javaheri CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL KHORSHIDI et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ALEXANDER JAVAHERI et al., <br><br> Defendants and Respondents. | B326824 consolidated with B329257 <br><br> (Los Angeles County Super. Ct. Nos. BC567865, BC408948) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Early Sullivan Wright Gizer & McRae, Scott E. Gizer, Padideh Zargari and Zachary C. Hansen for Plaintiffs and Appellants.

Reuben Raucher & Blum, Stephen L. Raucher, Yunfei Ni for Defendants and Respondents.

# INTRODUCTION

In 1987, appellants Michael Khorshidi[1] and Nejatolah Rabbanian (collectively, K&R) began a joint venture with respondents Alexander Javaheri and David Javaheri, and a fifth partner, non-party Paul Abdi. Following litigation and an arbitration between K&R and the Javaheris, in 2008 an arbitrator found in favor of the Javaheris. The 2008 arbitration award instructed the Javaheris to recoup their damages by adjusting ongoing partnership distributions the joint venture owed to K&R. In 2014 K&R filed a lawsuit alleging that beginning in 2010 the Javaheris owed them full (not adjusted) partnership distributions. The Javaheris asserted that the continued adjusted distributions were justified under the 2008 arbitration award. After a bench trial, the court found that based on the 2008 arbitration award, K&R owed the Javaheris the lump sum of $276,100 each in December 2009, the Javaheris were entitled to recoup that amount through adjusted distributions from 2010 to 2015, but that the Javaheris had taken too much. The court therefore entered a judgment requiring the Javaheris to repay K&R the excess amount they had collected. Most of the court's findings were confirmed on appeal. However, the matter was remanded to address the Javaheris' contention that because the court calculated their damages as a lump sum due in 2010, they were entitled to prejudgment interest on that amount.

---

[1]    Michael Khorshidi died on October 1, 2024. Appellant's wife and successor in interest, Jaleh Khorshidi, has been substituted in as a party.

In the proceedings following remand, the trial court found that the Javaheris were entitled to prejudgment interest, and that after subtracting the adjusted partnership distributions between 2010 and 2015, K&R still jointly owed the Javaheris over $77,000. K&R appealed. The court then awarded the Javaheris attorney fees. K&R also appealed that order, and we consolidated the appeals.

We affirm. The Javaheris were entitled to prejudgment interest under Civil Code section 3287, subdivision (a), because the damages were certain or capable of being made certain based on information known to all parties. We also reject K&R's argument that they were entitled to an offset of damages based on case law addressing offsets arising from the same contract. Here, the Javaheris' damages arose from the 2008 arbitration award, which was not the basis for K&R's claims, so the claims were not based on the same contract. In addition, K&R were awarded no damages to offset. K&R's challenge to the attorney fee award is contingent upon reversal of the judgment in favor of the Javaheris. Because we affirm the judgment, we also affirm the attorney fee award.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Previous litigation and 2008 arbitration award

There has been extensive litigation among the parties as discussed in three prior nonpublished opinions, *Javaheri v. Khorshidi*, Nov. 13, 2006, B183177 (*Khorshidi I*), *Khorshidi v. Javaheri*, Aug. 5, 2021, B285132 (*Khorshidi II*), and *Khorshidi v. Javaheri*, May 15, 2024, B329246 (*Khorshidi III*). We limit this summary to the facts relevant to this appeal.

In April 1987, the five parties—K&R, the Javaheris, and Abdi—entered into a joint venture agreement (the JV Agreement)

3

regarding a commercial property in downtown Los Angeles, 5th & LA.  Under the JV Agreement, K&R each held a 30 percent interest in the joint venture, Abdi held a 20 percent interest, and the Javaheris each held a 10 percent interest.  K&R were the managing partners of the joint venture; they were required to make regular distributions of net cash flow to the other partners according to each owner's interest.

In 1999, without the consent of the Javaheris, K&R refinanced the joint venture to take out a loan; they used the money to invest in a competing property. These actions led to litigation among the partners in 2002.  After a 2005 trial, a jury found against K&R and awarded actual damages of $1,130,519.60, and punitive damages of $1.7 million against each of them.  This court affirmed the judgment in *Khorshidi I*.

In July 2005 the Javaheris sued K&R again in two lawsuits that were sent to arbitration.  In a 2008 ruling, the arbitrator found in part that K&R's use of joint venture funds to pay the 1999 loan between February 2005 and April 2008 "resulted in $2,418,423.74 less being available for partnership distributions during the time applicable to the arbitration proceeding." The arbitration award ordered K&R, jointly and severally, to pay the Javaheris each 10 percent of that figure, $241,842.37, reflecting the Javaheris' 10 percent ownership in the joint venture.  The 2008 arbitration award also held that K&R used joint venture funds to pay their attorney fees and costs in the 2002-2005 litigation and the 2005-2008 litigation/arbitration, and ordered K&R to repay those amounts.  (*Khorshidi II, supra.*)

The arbitration award further ordered management of the joint venture to be shifted to the Javaheris.  The award authorized the Javaheris "to adjust partnership distributions

4

commencing May 1, 2008, to recognize an additional distribution to themselves of an amount calculated as 10% each of the amount(s) paid by [the joint venture] during any given month to discharge the obligation of the existing encumbrance against 5th & LA," i.e., the 1999 loan. We call these adjusted partnership payments the "10 percent redistributions." The arbitration award was confirmed as a judgment in November 2008.

The 1999 loan came due in December 2009 with an outstanding balance of $2,761,000. The Javaheris did not pay off the loan, but on February 28, 2010 entered into a "change in terms agreement" with the lender, Community Bank, which extended the loan term to March 2015.[2] When the extended Community Bank loan came due in March 2015, the five partners paid the outstanding balance with personal funds. The Javaheris continued adjusting K&R's partnership distributions through October 2015 based on the payoff amount.

**B. Litigation leading to this appeal**

1. *Allegations and statement of decision*

In 2014 K&R sued the Javaheris, alleging in part that the Javaheris were not entitled to the 10 percent redistributions they withheld after the initial term of the 1999 loan ended in December 2009.[3] In their amended complaint filed in May 2015, K&R alleged that when the Community Bank loan came due in December 2009, the Javaheris could have paid off the loan or

---

[2]    Based on these dates, the end of the 1999 loan is variously characterized in the record as occurring in December 2009, February 2010, and March 2010. The date discrepancy is not relevant to our analysis, as the parties stipulated to the final balance of the loan.

[3]    In *Khorshidi II*, we referred to this lawsuit as "the loan action."

refinanced it on more favorable terms with another bank. Instead, the Javaheris entered into the change in terms agreement "with the intent and for the purpose of perpetuating the appearance of the same 'existing obligation' to Community Bank," which would purportedly entitle them to continue collecting 10 percent redistributions under the 2008 arbitration agreement. K&R alleged that the Javaheris were not entitled to collect the redistributions from 2010 to 2015, because "as of December 9, 2009, the damages attributed to the [1999] Loan (for which the Arbitrator sought to compensate the Javaheris by the award of 10% Distribution Award) effectively had been fully repaid."

In their cause of action for breach of contract, K&R alleged that all parties were bound by the JV Agreement, and as managers of 5th & LA, the Javaheris "were contractually obligated . . . to distribute the entire net cash flow received by the Joint Venture." The Javaheris failed to do so in part because "[u]nder the auspices of" the 2008 arbitration award the Javaheris continued to collect 10 percent redistributions. K&R alleged that the "total amount wrongfully deducted by the Javaheris . . . from the distributions otherwise due to [K&R] from 5th and LA" was in excess of $360,000. K&R also sought a declaration from the court that under the 2008 arbitration award, "'the existing obligations' represented by the 1999 Refinance Loan were discharged by December 9, 2009." In addition, K&R requested an accounting because "[t]he precise amounts due to [K&R] by 5th and LA, and wrongfully diverted from [K&R] by the Javaheris under the auspices of the [2008 arbitration award], are presently unknown and cannot be ascertained without an accounting of (i) all amounts paid by 5th and LA to Community

6

Bank, and (ii) all amounts paid by 5th and LA to the Javaheris, and deducted from distributions otherwise payable to [K&R]."

K&R's 2014 lawsuit was consolidated with an existing action that had been pending since 2009, in which the partners cross-complained against each other for various alleged breaches of the JV Agreement. The case proceeded to a bench trial between August 2016 and February 2017.

The parties stipulated to certain facts before trial, including the following. In December 1999, K&R arranged for the 5th & LA property to be refinanced with a 10-year, $8,000,000 mortgage from Community Bank; the loan had a maturity date of December 9, 2009. The Javaheris, after taking over the management of the joint venture pursuant to the 2008 arbitration award, entered into the change in terms agreement with Community Bank, extending the loan's termination date to March 1, 2015. On February 28, 2010, the date of the change in terms agreement, the principal balance owed on the 1999 loan was $2,761,554.31. Relying on the 2008 arbitration award, the Javaheris "deduct[ed] from the monthly distributions payable to [K&R] an amount equal to ten percent (10%) of the amounts paid by 5th and LA to Community Bank from February 28, 2010 through February 18, 2015." Thus, from "December 24, 2010 through February 18, 2015, the Javaheris adjusted the distributions payable by 5th & LA by deducting a total of $347,776.07 from [K&R's] distributions ($173,776.07 from each [ ]) [*sic*] and paying that amount to the Javaheris."[4] Through October 2015, the Javaheris collected additional redistribution payments tied to the 2015 loan payoff amount.

---

[4]     As noted below, the parties stipulated to slightly different amounts in the retrial following remand.

In their closing briefs after trial, K&R asserted again that the Javaheris were not entitled to collect the 10 percent redistributions after the 2010 change in terms agreement. K&R requested a damages award of $347,552.14 total, or $173,776.07 each. (*Khorshidi II, supra*.)  The Javaheris argued that the 2008 arbitration award entitled them to the distributions they collected.  (*Ibid*.)

On June 1, 2017, the trial court issued a written statement of decision.  The court agreed with K&R that "the 10 percent redistribution scheme" in the 2008 arbitration award "was tied to the Joint Venture's payment of the then existing 'obligation' or loan."  The court found that the change in terms agreement "constituted a new loan that extinguished the 1999 Community Bank obligation"; in other words, the 1999 loan was discharged with the funds from the new loan.

The trial court noted that at the time of the change in terms agreement, there was an approximately $2,761,000 balance on the 1999 loan.  Because the Javaheris each were entitled to 10 percent of the amounts paid by the joint venture "to discharge the obligation," the Javaheris were entitled to $276,100 from K&R at the time of the 2010 change in terms agreement. The court held that the Javaheris were entitled to collect this amount by continuing to collect redistribution payments: "[T]he Javaheris were entitled to 'adjust partnership distributions' to reflect $276,100 owed to them by each of [K&R]."  Between 2010 and 2015, however, the Javaheris actually "received a total of $365,464.90 from each of" K&R, which was more than the Javaheris were entitled to collect.  So the court ordered that K&R were "each entitled to judgment against the Javaheris jointly and severally in the amount of $89,364.90. (365,464.90 less 276,100

8

equals 89,364.90.)" The trial court later added $23,208.69 in prejudgment interest to the amounts owed K&R, and in March 2018 entered a judgment for a total award of $112,573.59 each.

### 2. *Motion for new trial and partial reversal*

The Javaheris filed a motion for new trial in April 2018, asserting that because K&R owed the Javaheris $276,100 in February 2010, the Javaheris were entitled to prejudgment interest on that amount, which must be factored into any damages award. The Javaheris asserted that a new trial was warranted on the grounds of surprise. (Code Civ. Proc. § 657, subd. 3.) They argued that the court's holding—that K&R owed the Javaheris 10 percent of the loan payoff amount in February 2010—did not reflect any of the parties' positions throughout the litigation, so the Javaheris had not previously sought interest on the 2010 loan payoff amount. K&R opposed the motion, in part because the Javaheris had never requested prejudgment interest.

The trial court issued a written ruling granting the Javaheris' motion for new trial. A few days later, however, the trial court issued a second ruling stating that its first ruling had been untimely under the 60-day deadline in former Code of Civil Procedure section 660, and therefore the motion for new trial was denied as a matter of law.

In *Khorshidi II*, filed in August 2021, a different panel of this division reversed the judgment in the loan action and remanded the matter for the limited issue of determining the Javaheris' entitlement to prejudgment interest. We stated, "The facts of this case were largely uncontested. The parties understood the scope of the 2008 arbitration award, the amounts of the 10 percent redistributions, and the details of the 1999 and 2010 loans. The parties' positions at trial were based on their

9

understanding of those factors.  They did not expect, however, that the trial court would reach a decision that did not quite match what either party advocated—a finding that [K&R] owed the Javaheris a lump sum of $276,100 in February 2010—and that such a decision would affect any claims of prejudgment interest.  Because the parties did not anticipate such a ruling, they did not tailor their arguments to address the issues regarding prejudgment interest that arose from it.  The court's unexpected ruling constitutes a surprise under [Code of Civil Procedure] section 657, subdivision 3."  We found that "a new trial is warranted to allow the court to consider the Javaheris' entitlement to prejudgment interest, if any, in the calculation of damages."  We stated, "Given the complex nature of the parties' claims here, including liability based on the 2008 arbitration award and the piecemeal manner by which the competing debts were collected through monthly partnership distributions, the trial court is in the best position to determine whether prejudgment interest is warranted . . . ."

## C.   **Retrial**

### 1.   *Phase one*

Upon remand, the court bifurcated trial into two phases: phase one to determine whether the Javaheris were entitled to prejudgment interest, and if so, phase two to determine the interest amount.

The Javaheris filed a brief asserting that they were entitled to prejudgment interest under Civil Code section 3287, subdivision (a), which states in part, "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon

10

from that day." The Javaheris asserted that their right to recover damages vested on the day the 1999 loan terminated, "and their damages were certain, or at least capable of being made certain given that [K&R] could have computed the amount owed from reasonably available information."

The Javaheris also contended that interest should be calculated without consideration of any offset based on K&R's claims in their 2014 complaint. The Javaheris anticipated that K&R would rely on case law holding that "[w]hen a plaintiff sues for a liquidated sum and the defendant establishes an offsetting claim based upon defective performance of the same contract by the plaintiff, the amount of the plaintiff's liquidated sum must be offset against the defendant's unliquidated sum as of the due date of the original debt and only the balance bears interest." (*Burnett & Doty Development Co. v. Phillips* (1978) 84 Cal.App.3d 384, 391 (*Burnett*).) The Javaheris argued that their claim and K&R's claim were not "based upon defective performance of the same contract," because the Javaheris' damages were based on the 2008 arbitration award, while K&R's claim arose from the alleged failure to pay distributions from 2010 to 2015 as required by the JV Agreement.

In their opposition, K&R asserted that the Javaheris were not entitled to any prejudgment interest. K&R argued that prejudgment interest is awarded to compensate a party for loss of use of funds, but "the Javaheris had access to, and collected the damages award throughout the prejudgment period and in fact recouped more than the entire amount of the award during that period" by collecting the 10 percent redistributions from K&R from 2010 to 2015. In addition, the Javaheris "had dominion and control" over the award throughout the prejudgment period,

11

because they controlled the joint venture. K&R further argued that the damages were not certain or reasonably calculable because there was "a dispute between the parties concerning the imposition of recoverable damages, as well as when the recovery of such damages became vested in the Javaheris." K&R argued in the alternative that the damages award should be offset because K&R asserted a liquidated damages claim based on the JV Agreement, the award to the Javaheris was also based on the JV Agreement, and the Javaheris' claim was unliquidated "because it was not certain until the judgment was rendered."

The court held that the Javaheris were entitled to prejudgment interest. In its written ruling issued on May 2, 2022, the court stated, "In the court's view, there is no question as of March 1, 2010, the amount due from [K&R] to [the Javaheris] was certain and/or capable of being made certain. That the parties disputed liability or the interpretation of the 2008 Arbitration award is not controlling. The 2008 Arbitration award made clear the Javaheris were entitled to 10 percent of the amounts paid by the Joint Venture to pay off the 1999 loan . . . . Thus, Civil Code section 3287, subdivision (a) entitles the Javaheris to prejudgment interest as of March 1, 2010 on the amounts due from [K&R]." The court considered and rejected each of K&R's arguments to the contrary. The court held that the arguments about an offset would be addressed in phase two of the trial.

2. *Phase two*

Before phase two, the parties submitted a list of stipulated facts and a joint exhibit list. The stipulated facts included the monthly redistribution payments Alexander and David Javaheri received from March 2010 to October 2015—a total of

12

$364,157.01 to Alexander and $368,411.05 to David. The parties filed simultaneous trial briefs.

In K&R's trial brief, they asserted that "the calculation of prejudgment interest should be offset by K&R's competing claim for liquidated damages in this case." K&R reasoned, "In commencing this action K&R sought $365,464.90 each, based on the Javaheris' alleged failure to pay distributions to K&R pursuant to the terms of the JV Agreement between 2010 and 2015." Because the court's 2017 order determined "the percentage of the outstanding 1999 loan amount that the Javaheris were entitled to on their respective ownership interest in the Joint Venture as set forth in the JV Agreement," "these two competing damages claims both clearly originated from and were based on the terms of the same contract – the JV Agreement." K&R stated, "In this case, the damages award the Javaheris were found to be entitled to was $276,100 each, whereas K&R sought $365,464.90 each, which [in the 2017 ruling] resulted in an offset award of $89,364.90 for K&R respectively. [Record citation.] Thus, the Javaheris are not entitled to prejudgment interest here because the amount of their claim was eclipsed by that of the K&R."[5]

The Javaheris asserted in their trial brief that the redistributions they collected from K&R from March 2010 to 2015 followed applicable rules relating to interest, in that "when a redistribution amount was received by either of the Javaheris, it was first applied to the interest accrued, and the remaining amount, if any, was then applied to the outstanding principal." They stated that using these calculations, the debt had not yet

---

[5]  K&R also asserted several arguments that are not relevant to this appeal and are not summarized here.

been satisfied: "[A]fter the Javaheris received their last JV redistributions on October 14, 2015," the "outstanding principal owed to Alexander Javaheri was $26,203.75," and "the outstanding principal owed to David Javaheri was $19,055.74," which had continued to accrue interest. The Javaheris stated that as of the scheduled phase two trial date, "the total amounts due to Alexander Javaheri and David Javaheri, respectively, will be $44,211.21 and $32,147.50."

Following a short bench trial, the court issued a written ruling on November 7, 2022. The court rejected K&R's argument that an offset should apply, stating, "The court . . . finds offsetting claims is not appropriate here as the claims do not arise from the same contract. [The Javaheris'] claim is based on the 2008 arbitration award and judgment. [K&R's] claims are based on breach of the joint venture agreement."

The court found that the appropriate prejudgment interest rate was 10 percent. The court stated that based on the stipulated facts, K&R remained indebted to Alexander Javaheri in the amount of $26,203.75, which had remained unpaid since October 14, 2015. Thus, Alexander Javaheri was "entitled to prejudgment interest of $18,531.58. (That is, $7.18 per day from October 14, 2015 to November 7, 2022 [2,581 days].) [K&R] shall pay to Defendant Alexander Javaheri $44,735.33." (Brackets in original.) The court found that K&R remained indebted to David Javaheri in the amount of $19,055.74, which had remained unpaid since October 14, 2015. Thus, David Javaheri was "entitled to prejudgment interest of $13,472.82. (That is, $5.22 per day from October 14, 2015 to November 7, 2022 [2,581 days].) [K&R] shall pay to Defendant David Javaheir [*sic*] $32,528.56." (Brackets in original.)

14

The court also noted that as in phase one, it found "unpersuasive" K&R's argument that the Javaheris' damages were not certain or capable of being made certain. The court stated, "While [the Javaheris] may have alleged surprise as grounds for a new trial, [the Javaheris'] surprise was the court finding the 10 percent redistribution obligation ceased in 2010, not 2015. [The Javaheris'] litigation position was an attempt to extend liability to [K&R] as long as possible. The court does not find on these facts the underlying liability 'was uncertain and not reasonably calculable by either party until this Court issued its judgment.' ([Citation to K&R's trial brief.]) [K&R's] underlying liability was clear and the amount outstanding was capable of determination when the 1999 loan was extinguished."

The court entered judgment in favor of the Javaheris on November 21, 2022. The judgment also stated that this judgment superseded the prior judgment, and that K&R took nothing on their claims against the Javaheris. K&R moved for a new trial, and the trial court denied the motion in a written order filed on February 3, 2023. K&R timely appealed.

## D.    The Javaheris' motion for attorney fees

The Javaheris filed a motion seeking $163,945.17 in attorney fees. They asserted that as the prevailing parties, they were entitled to attorney fees under Civil Code sections 1717 and 1033.5, as well as the JV Agreement. K&R opposed the motion, asserting that there was no final disposition of the matter in light of the pending appeal, and that the Javaheris were not the prevailing parties over the entire litigation. The Javaheris filed a reply.

In a written ruling, the trial court granted the motion, stating, "[T]he court finds no dispute about who prevailed on the

15

action on the contract. The Javaheris received a net monetary recovery; K&R received nothing." The court awarded the amount of attorney fees the Javaheris requested. K&R filed a second notice of appeal. The parties moved to consolidate the two appeals, and we granted the motion.

## DISCUSSION

### A.     Prejudgment interest

With respect to prejudgment interest, the parties agree there are two issues to be addressed on appeal: whether the Javaheris are entitled to prejudgment interest, and if so, in what amount.

#### 1.     *Entitlement to prejudgment interest*

K&R argue the trial court erred in finding that the Javaheris were entitled to prejudgment interest. They assert that the amount of damages was not certain or reasonably calculable before the trial court issued its 2018 judgment, and the Javaheris did not know they were entitled to an amount certain until 2017, when the court issued its written ruling stating as much. The Javaheris contend the trial court's ruling on retrial was correct.

The facts are not in dispute; K&R contend the court erred as a matter of law. In the absence of a factual dispute, an appellate court independently determines whether damages were ascertainable for purposes of Civil Code section 3287, subdivision (a). (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1320, 1321-1322 (*Glassman*); *State of California v. Continental Ins. Co.* (2017) 15 Cal.App.5th 1017, 1038 (*Continental*).)

As noted above, Civil Code section 3287, subdivision (a), states in part, "A person who is entitled to recover damages

16

certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day." "What is critical is not whether the defendant actually knows how much it should pay; rather, it is whether the defendant could have calculated how much it should pay, if it had known how a court would ultimately rule on the legal issues." (*Continental, supra,* 15 Cal.App.5th at p. 1043.) "'Courts generally apply a liberal construction in determining whether a claim is certain.'" (*Id.* at p. 1038.)

K&R argue "there can be no dispute that the amount of damages" awarded to the Javaheris "depended on judicial determination" because "prior to the 2018 Judgment . . . there was a dispute between the parties concerning the imposition of recoverable damages, as well as when the recovery of such damages became vested in the Javaheris." K&R assert that in *Khorshidi II*, by finding that a new trial was warranted on the issue of "surprise," this court "specifically acknowledged" that damages could not have been calculated by the parties without judicial involvement.

K&R misstates our previous holding. We found that the court reached a conclusion that differed from the parties' legal arguments in the previous trial; we did not find that the damages could not have been calculated by the parties. Indeed, based on the information available, either party could have advocated for the position the court reached. The parties stipulated before the initial loan action trial that "As of the February 28, 2010, the date of the 2010 Change In Terms Agreement, the principal balance owed on the Community Bank Loan was $2,761,554.31." The surprise was that the court did not adopt either party's *legal*

position, which does not mean the damages were not capable of being made certain by calculation based on the information available to both parties.

Prejudgment interest under Civil Code section 3287, subdivision (a) is available if the defendant knows or is "able to calculate from reasonably available information the amount of the plaintiff's liquidated claim owed as of a particular day." (*Glassman, supra*, 90 Cal.App.5th 1281, 1294.)  Here, had the Javaheris claimed damages based on the loan payoff amount in 2010, the damages would have been easily calculable.  (See *Continental, supra*, 15 Cal.App.5th at p. 1043.)

K&R argue "it is evident" the damages were not calculable because "neither the Javaheris nor K&R made such an argument at any time before the Trial Court issued it 2018 Judgment." However, it is irrelevant for purposes of Civil Code section 3287, subdivision (a) that the parties did not advocate for a certain position or that they disagreed about liability.  "[D]amages are ascertainable if the only impediment to the determination of the amount is a legal dispute concerning liability or the measure of damages." (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 151.)  Here, the court determined the measure of damages based on facts that were known to both parties. K&R therefore could have calculated the damages with certainty.[6]

---

[6]  In their reply brief, K&R argue for the first time that the doctrine of judicial estoppel bars the Javaheris from arguing that they are entitled to prejudgment interest, because the Javaheris' argument in 2018 that the verdict constituted a surprise contradicts their argument now that the damages were certain. "We generally do not consider arguments raised for the first time in a reply brief" (*Raceway Ford Cases* (2016) 2 Cal.5th 161, 178),

18

K&R also assert that they were unable to calculate any damages because the Javaheris managed the joint venture and failed to provide K&R with accounting information. This argument, which is not supported by any record citations in K&R's briefing, is belied by K&R's own first amended complaint, which stated that as of December 1999, the outstanding principal on the 1999 loan was approximately $2.7 million—the figure that was the basis of the trial court's award to the Javaheris. K&R further alleged in that complaint that they were aware of the loan's maturity date and payoff amount at the time, and they "secured, and presented the Javaheris with, alternative refinancing options from multiple lending institutions," which in K&R's opinion were better options than extending the loan's term with Community Bank. These included specific offers to lend the joint venture $2.7 to $2.85 million for five-year terms. Thus, K&R's own pleadings demonstrate that they were aware of the loan's balance and other joint venture financial issues at the time the loan matured in 2009. For this reason, the case is unlike *Chesapeake Industries, Inc. v. Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, which K&R cite. There, the Court of Appeal disallowed prejudgment interest where neither party could ascertain its liability without an accounting by the trial court (see

and will not do so here, because the Javaheris have not had an opportunity to rebut these arguments on appeal. Moreover, judicial estoppel applies when a party takes two positions that are "totally inconsistent." (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 449.) The Javaheris have maintained throughout these proceedings that based on the 2008 arbitration award, they were entitled to damages arising from the continuing effects of the 1999 loan. The trial court ultimately found that the Javaheris were correct.

149 Cal.App.3d at pp. 909-911), and the creditor "cross-claim[ed] for an accounting to determine the amount due and then charge[d] the debtor who had no knowledge of the sum due with prejudgment interest on that same adjudicated sum." (*Id*. at p. 914.) Here, K&R were aware of the relevant financial information before the action was filed.

K&R assert in the alternative that if the Javaheris were entitled to prejudgment interest at all, the calculation of the interest should run only from 2014, the date K&R filed their complaint. They base this argument on Civil Code section 3287, subdivision (b) which states that for a claim "based upon a cause of action in contract where the claim was unliquidated," prejudgment interest is permitted only from "the date the action was filed." K&R acknowledge that an "unliquidated" claim is "uncertain." As discussed above, we reject the contention that the damages were uncertain. K&R therefore have not demonstrated that the trial court erred in holding that the Javaheris were entitled to prejudgment interest.

2. *Amount of prejudgment interest*

Turning to the amount of the prejudgment interest, K&R argue that any damages award should be calculated by offsetting the parties' competing claims. As noted above, "When a plaintiff sues for a liquidated sum and the defendant establishes an offsetting claim based upon defective performance of the same contract by the plaintiff, the amount of the plaintiff's liquidated sum must be offset against the defendant's unliquidated sum as of the due date of the original debt and only the balance bears interest." (*Burnett, supra,* 84 Cal.App.3d at p. 391.) K&R argue that "if offsetting is applied . . . the amount ultimately found to be owed to the Javaheris . . . ($276,100 from K&R each) had been

20

repaid in full (plus a surplus of $27,418.46) and, thus, the Javaheris would not be entitled to prejudgment interest."[7]

The reasoning of *Burnett* does not apply here because, as the trial court held, the parties' claims were not "based upon defective performance of the same contract." K&R's liability to the Javaheris flowed from the 2008 arbitration award and the related judgment. K&R did not have any claims against the Javaheris based on the 2008 arbitration award. Thus, the parties' claims were not "based upon defective performance of the same contract." (*Burnett, supra,* 84 Cal.App.3d at p. 391.) Moreover, as noted above, the Javaheris' claim was not unliquidated; it was calculable by the parties based on information known to them. Furthermore, the trial court did not find that K&R successfully made a competing claim; it ultimately held that K&R owed the Javaheris, and the Javaheris owed K&R nothing, so there was no competing award to offset.

In *Burnett*, the plaintiff, Burnett & Doty, alleged the defendant, Phillips, failed to timely complete the work required by the parties' construction contract. Phillips cross-complained that Burnett & Doty failed to pay the balance on the same contract. (*Burnett, supra,* 84 Cal.App.3d at p. 387.) The appellate court stated, "Phillips' claim for the balance due under the contract was reduced by the existence of an unliquidated setoff or counterclaim attributable to Phillips' breach of contract;

---

[7] K&R do not explain their math. Instead, they cite to over 120 pages in the record documenting the 10 percent redistribution payments made to the Javaheris from March 2010 to October 2015. As noted above, the parties stipulated that in this period Alexander Javaheri collected $364,157.01 and David Javaheri collected $368,411.05 in redistributions.

21

therefore interest was to be allowed only on the balance found to be due after deduction of the offset.  As the amount of damages awarded to Burnett & Doty for Phillips' breach of contract exceeds [Phillips'] demand, 'there remains nothing on which to compute or allow interest.'" (*Burnett, supra*, 84 Cal.App.3d at pp. 391-392.)

K&R also cite *Great Western Drywall, Inc. v. Roel Construction Co., Inc.* (2008) 166 Cal.App.4th 761, 770 (*Great Western*).  That case involved a general contractor, Roel, and a subcontractor, Great Western.  Great Western sued Roel for breach of contract and related counts, alleging that Roel underpaid it; Roel cross-complained against Great Western for breach of contract and negligence, asserting that Great Western failed to adequately perform its work.  (*Id.* at p. 765.)  After a bench trial, the court awarded Great Western $332,106 and Roel $320,848.  (*Ibid.*)  Roel argued on appeal that the trial court erred in awarding Great Western prejudgment interest on its liquidated damages claim, "since Roel's damages exceed Great Western's damages and entirely offset the interest award."  (*Id.* at p. 764.)  The Court of Appeal noted that "an offset is allowed 'on the theory that the contractor is entitled to interest only on such amount of the use of which he has been deprived during the period of default.'"  (*Id.* at p. 768.)  The appellate court held that Roel was entitled to an offset because "[b]oth parties had claims against each other under the [same] subcontract, thus setoff serves the interests of justice and the purposes of the prejudgment interest statute."  (*Id.* at p. 770.)

This case is unlike *Burnett* and *Great Western* because there were no competing damages awards on the same contract, the trial court ultimately held that K&R were not entitled to any

22

damages, and the Javaheris' claim was not unliquidated.  The reasoning for the offsets in *Burnett* and *Great Western* does not apply here.

K&R further argue that despite finding that no offset was warranted, the trial court nevertheless "offset the improper distributions made by the Javaheris against the $276,100 plus prejudgment interest."  K&R argue that "prejudgment interest should have also run on each improper redistribution from the time it was made," and had the court calculated damages that way, K&R would "come out ahead."

We disagree that the court offset competing claims.  Not only did the court expressly reject an offset, it also did not find that K&R successfully made a competing claim.  Thus, the court credited the payments K&R already made to the Javaheris, then ordered K&R to pay the remainder of the debt. Crediting payments against a judgment can be called an "offset."  (See, e.g., *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 753 ["To prevent a double recovery, equity demands credit be given for payments received on the judgment.  Such a balance acts as an offset against the judgment."].)  But here the court did not offset the Javaheris' claims against K&R's competing claims, as the court did in *Burnett*.

In addition, we disagree with K&R's contention that the court should have considered prejudgment interest on K&R's claims when calculating the judgment award. K&R were not awarded damages on retrial.  No consideration of prejudgment interest to K&R was warranted under the circumstances.  The judgment is therefore affirmed.

23

## B.     Attorney fees

K&R assert that "[i]f the Javaheris are not entitled to prejudgment interest and the damages award[ ] in favor of K&R is reinstated, then necessarily the fee award in the Javaheris' favor must be reversed."  They offer no additional arguments regarding the attorney fee award.  Because we affirm the judgment, we find no basis to disturb the trial court's award of attorney fees to the Javaheris.

## DISPOSITION

The judgment is affirmed.  The Javaheris are entitled to recover costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


COLLINS, ACTING P. J.


We concur:



MORI, J.                                                    ZUKIN, J.

24